**CORNELIUS et al. v. COOK et al.**

**No. 2677.**

Court of Civil Appeals of Texas. Eastland.

Sept. 24, 1948.

768

Thomas & Thomas, of Big Spring, for appellants.

Carl Rountree and Mac Wassell, both of Lamesa, Texas for appellees.

LONG, Justice.

On the 9th day of November, 1938, appellants F. M. and G. W. Cornelius borrowed $100.00 from Mary Dell Cook and as security therefor, executed a deed of trust covering each of their ⅟₁₆th interest in a one-half section of land in Dawson County. The land originally was the community property of the father and mother of the appellants. At the time of the execution of the deed of trust, the mother of the appellants was living. At such time their father was dead. The interest covered by such deed of trust was the interest inherited by appellants from their father. Upon the death of their mother, each of the appellants inherited from her a ⅟₁₆th interest in the land. At the time of the institution of this suit, they each owned a ⅛th interest therein. Nothing was paid upon the indebtedness and the appellee Mary Dell Cook foreclosed the same under the power given in the deed of trust and sold the property through a trustee and on September 7, 1943, received from the trustee a deed to all of the interest of the appellants in such one-half section of land. The indebtedness at that time amounted to approximately $275.00.

Appellants instituted this suit to cancel the trustee's deed upon the ground that appellee had been tendered the entire amount due upon such debt prior to foreclosure and, in the alternative, for reformation of the trustee's deed so as to show that it included only the undivided interest in the land which they owned at the time of the execution of the deed of trust, and not the interest which they afterward acquired by inheritance from their mother. Appellants tendered into court the amount of the indebtedness then due. Appellee answered by general denial and cross action in trespass to try title and claimed the entire ⅛th undivided interest which each of the appellants owned in the land and sought to clear her title thereto. The court submitted the case to the jury on one special issue, as follows:

"Do you find from a preponderance of the evidence that Gail Cornelius, in the presence of his father, made tender of a check for the total amount of principal and interest then due on the note in question to Mrs. Cook on or about July 18, 1943? Answer 'Yes' or 'No'."

The jury answered such issue in the affirmative.

Appellants made a motion for judgment based upon the above issue. Appellee made a motion for a judgment non obstante veredicto and admitted she was not entitled to the ⅟₁₆th undivided interest in the land each of the appellants acquired after the execution of the deed of trust, but was only entitled to the ⅟₁₆th undivided interest which each of the appellants owned at the time the deed of trust was executed. The court overruled appellants' motion for judgment and granted appellee's motion and entered a judgment for appellants to the ⅟₁₆th undivided interest that they each inherited from their mother and entered judgment for the appellee for the ⅟₁₆th undivided interest that each of the appellants had at the time the deed of trust was executed.

The controlling question presented is, did appellants, prior to the foreclosure proceedings, make legal tender to appellee of the total amount of principal and interest due on the note. If they did make legal tender, then the trial court should have granted appellants' motion for judgment and should have entered a judgment in their favor. On the other hand, if legal tender was not made, then the trial court was correct in granting appellee's motion for judgment notwithstanding the verdict, and the judgment entered was proper. It, therefore, becomes necessary for us to apply the law to the facts and determine whether the evidence introduced fails to

show, as a matter of law, that legal tender was made.

The parties to this suit all reside in Texarkana, Arkansas. Gail Cornelius, the son of appellant F. M. Cornelius, in July, 1943, was a soldier in the United States Army. He came home on a furlough and he and his father had a conversation with appellee, Mary Dell Cook, with reference to the note due her by his father and his uncle. We quote from the testimony of F. M. Cornelius as follows:

"Q. Mr. Cornelius, talk so the Jury can hear, and tell only what you did. A. Me and my son went over there, and he said, 'Now, Mary Dell, here is your money, a check for your money. All you have got to do is get the note and sign it.' And she said, 'I haven't got it, but as Uncle Bill is going to sell it, let him alone until he sells the place and we will settle up then.' And then he said, 'Here is your money; all you have got to do is get the note, and it will be square,' and she refused. All I could do was offer."

\* \* \* \* \* \*

"Q. Was there anything said about where the note was at that time? A. She said she didn't have it.

"Q. Did she say where it was? A. No, sir.

"Q. Did she say it was in the bank? A. She didn't tell me anything about where it was.

"Q. Just said it wasn't there? A. Said she didn't have it; that is the way she said it.

"Q. But you are positive your son did offer to pay it? A. Had the check wrote out, done figured the interest, and he had the check done made out.

"Q. Do you recall how much it was for? A. No, sir; I don't.

"Q. Was that the total amount of the note, or just your half of it? A. The whole business.

"Q. You mean you were paying your brother's half of it too? A. Yes, sir, because the title cleared when the place was sold, if it was sold, they wanted the title cleared.

"Q. You don't remember how much the check was for? A. No, sir; he just told her, said, 'Here is the check for your money. All you have got to do is to get the note and sign it,' and says, 'Here is your money.'

"Q. How did you figure up the interest? A. They had done been, that had done been figured.

"Q. Who did? A. He did.

"Q. Did he know the date of the note? A. Yes, sir.

"Q. How did he get the date of the note? A. Well, he got it from some of the rest of them there. He had knowed I had borrowed the money. He knew when I borrowed the money.

"Q. Well, what is the date of the note? A. Well, I don't know.

"Q. You mean you don't know now? A. No.

"Q. And you just looked at this note, didn't you? A. I was away from home at work when this all come up, when they got the letter from my brother; I had just come in that night; we went over the next morning.

"Q. Do you have any idea at all how much the check was for? A. No, I don't.

"Q. Was it for as much as $170.00? A. He just told her, says, 'Here is your money, a check for your money. All you have got to do is get the note and sign it; that is all.' That is all there was to it.

"Q. Did she make any statement about where the note was? A. No, sir; she didn't.

"Q. But she did say she didn't have it? A. No, she didn't say that, says, 'It ain't here,' or says she didn't have it. She didn't say where it was or anything of the kind."

Gail Cornelius returned to his post of duty shortly after this conversation and thereafter went overseas where he was killed, consequently, he never returned to his home. F. M. Cornelius is the only witness offered by the appellants upon the question of a tender by Gail Cornelius to appellee. Mrs. Moody, daughter of F. M. Cornelius, testified she was present when the offer was made, but she gave no details

in connection therewith. She further testified that she had a conversation with appellee Mary Dell Cook, in which she offered to pay the indebtedness, but appellants predicated their case upon the tender claimed to have been made by Gail Cornelius and we deem it unnecessary to discuss the evidence save and except as it bears upon the question of tender by Gail Cornelius.

The burden of proving a tender rests upon the party alleging a tender. 62 C. J., page 698, Sec. 101. It is not contended that appellants tendered Mary Dell Cook any money. All the evidence shows that the only tender made was a check. The evidence fails to show the amount of such check. The check was not offered in evidence and no explanation is given as to why it was not offered. There is no evidence showing upon what bank the check was drawn nor is there any evidence that Gail Cornelius had an account with any bank. The evidence fails to show that if appellee had accepted the check that the same would have been paid when in due course of business it might have been presented to the bank. The law is settled that for a check to have the effect of payment, the drawer thereof must have sufficient funds to his credit in the bank to pay the same or proof must be made that such check, when presented in the usual course of business, would be paid by the bank on which it is drawn. 32 Tex.Jur., page 660. It, therefore, follows that if a check is tendered in payment of a debt, that before same will constitute a legal tender, it must be shown that the party drawing the check had sufficient funds in the bank with which to pay it or that the check would be paid when in the usual course of business it is presented to the bank.

"If tender was made by bank check it must be proven that the tenderer had sufficient funds on deposit to meet it. Poague v. Greenlee, 22 Gratt (63 VA.) 724." 62 C.J., page 698.

It is further the law that in order to make a valid tender, the thing to be tendered must be actually produced and offered to the party entitled thereto and the tenderer must place the money or property in such a position that his control over it is relinquished for a sufficient time to enable the tenderee, if he so desires, to reduce it to possession by merely reaching out and laying hold of the money or thing. Richey v. Stanley, Tex.Civ.App., et al., 38 S.W.2d 1104. There is no showing in this record that the check was ever placed in such a position that Mary Dell Cook could reach out and lay hold of it or that Gail Cornelius ever surrendered his control over the check at any time. He told her, in effect, if and when she got the note and signed it, he would give her the check. The check was not then offered her but the offer was predicated upon appellee getting possession of the note and signing it.

Ordinarily, a tender of a debt payable in money must be made by money and a tender of a check is not sufficient. We recognize the rule that under certain circumstances, the offer of a check in payment of a debt will constitute a tender. In other words, where the tender is refused on account of a specific objection, then if the tenderee does not object because the tender is not made in money, he waives his right to thereafter insist the tender was not made in money. As we view the evidence in this case, appellee did not unqualifiedly refuse to accept the tender. If it should be held that she did refuse such tender, there is nothing in the record showing upon what ground or grounds such refusal was predicated. However, in view of the holdings made above, it is not necessary that we pass upon the question of waiver in this case.

The evidence, when viewed in the most favorable light to the appellants, fails to raise a question of fact on the issue of tender. Under the facts there was no legal tender as a matter of law. It is our belief that an instructed verdict in favor of the appellee would have been proper and that the action of the trial court in granting appellee's motion for a judgment notwithstanding the verdict, was correct.

The judgment of the trial court is affirmed.