Erma S. ROZELLE, Appellant,

v.

FIRST NATIONAL BANK IN DALLAS, Appellee.

No. 5568.

Court of Civil Appeals of Texas, Waco.

March 25, 1976.

Rehearing Denied April 22, 1976.

Garrett, Settle & Callaway, William O. Callaway, Jr., Ft. Worth, for appellant.

Hewett, Johnson, Swanson & Barbee, Ernest E. Figari, Jr., Dallas, for appellee.

HALL, Justice.

On August 26, 1970, the First National Bank In Dallas brought this suit against the appellant to recover on a written guaranty executed by her in which she guaranteed a certain indebtedness of her son, F. McQueen Rozelle (hereinafter "Rozelle"), to the Bank, and to foreclose a deed of trust lien on the appellant's property securing her debt under the guaranty. After a trial without a jury, judgment was rendered in favor of the Bank for $50,000.00 principal; interest accrued thereon to October 15, 1975, the date of judgment, in the amount of $29,-734.72; and foreclosure of the lien. The appellant questions the judgment, on grounds that (1) the Bank has never made the demand upon her for payment which she asserts is required by the guaranty agreement; and (2) the Bank is not entitled to interest beyond October 19, 1970, the day she assertedly tendered payment of the indebtedness to the Bank. We overrule these contentions and affirm the judgment.

Most of the proof was adduced by way of stipulations, and we find no dispute in the facts critical to our disposition on this appeal.

On May 3, 1967, the appellant and Rozelle executed and delivered to the Bank a "First Deed Of Trust Note" in the principal sum of $50,000.00 payable to the Bank. This note is referred to in the record as the "cattle note." Simultaneously, the appellant alone executed and delivered to the Bank a deed of trust to 36 acres of land in Dallas County, which secured payment of the note and its renewals or extensions. Additionally, the deed of trust secured the following:

"(b) all indebtedness arising pursuant to the provisions of this deed of trust and any and all renewals or extensions of any such item of indebtedness or any part thereof, (c) all loans and advances which Bank may hereafter make to the Grantor and any and all renewals or extensions of the same, or any part thereof, (d) all other and additional debts, obligations, and liabilities of every kind and character of Grantor, now or hereafter existing in favor of Bank, regardless of whether such debts, obligations and liabilities be direct or indirect, primary or secondary, joint, several, or joint and several, fixed or contingent, and regardless of whether such present or future debts, obligations and liabilities may, prior to their acquisition by Bank be or have been payable to, or be or have been in favor of some other person or have been acquired by Bank in a transaction with one other than Grantor, together with any and all renewals and extensions of such debts, obligations and liabilities, or any part thereof."

The deed of trust was duly recorded in Dallas County on May 16, 1967.

On January 1, 1968, the appellant, for a good and valuable consideration, executed and delivered to the Bank the guaranty in question in which she guaranteed payment of "loans extended F. McQueen Rozelle for purpose of interim financing of Conn. General Deal" by the Bank, "limited in the aggregate at any one time to the sum of $50,000.00 plus interest."

On September 24, 1969, Rozelle made and delivered to the Bank three promissory notes in the principal sums of $109,580.10, $50,000.00 and $2,500.00. These notes represent loans extended to Rozelle for the purpose of interim financing of the Connecticut General Deal. All of the notes were due on December 15, 1969. The two larger notes provide for interest at 9½% from September 5, 1969, until maturity, and at 10% thereafter; and the smaller note provides for interest at 9½% from September 24, 1969, until maturity, and at 10% thereafter. These notes have never been paid. The Bank is their present owner and holder. They and the guaranty form the base of this lawsuit and the judgment below.

In an action by Connecticut General Life Insurance Company against Rozelle in the United States District Court for the Eastern District of Oklahoma, in which the Bank was joined as a defendant and became a cross-claimant against Rozelle, the Bank recovered judgment against Rozelle on the three notes of September, 1969. This judg-

ment was affirmed by the United States Court of Appeals, Tenth District, on December 11, 1972, and became final on April 2, 1973. A separate suit was also filed by the Bank in the United States District Court for the Eastern District of Oklahoma against Rozelle on notes other than the three notes of September, 1969. The "cattle note" was not one originally sued on. However, in that case, the court determined that the question of payment vel non of the "cattle note" was tried by consent, and ruled that the "cattle note" was paid on January 8, 1968. This judgment was affirmed by the United States Court of Appeals, Tenth District, on January 31, 1974, and became final on May 8, 1974. Although ruling against the Bank on the "cattle note", the court concluded that the evidence was "wholly inadequate" to prove that the Bank acted in bad faith in seeking to collect on the note. The facts of these federal court cases, reported at 471 F.2d 29 and 493 F.2d 1196, are expressly a part of the record of our case by stipulation.

On the trial of the case at bar, the appellant did not plead the defense of failure of demand on her by the Bank. The trial court concluded that by this want of pleading the defense was waived. We concur with this ruling. Failure to make demand is an affirmative defense under Rule 94, Vernon's Tex.Rules Civ.Proc. By failure to plead it, the appellant waived the defense. *Durrum v. Hendrick,* 4 Tex. 495, 501 (1849); *Young v. J. F. Zimmerman & Sons, Inc.,* 434 S.W.2d 926, 927 (Tex.Civ. App.—Waco, 1968, writ dism.); *Gresham v. McElroy,* 309 S.W.2d 84, 90 (Tex.Civ.App.— Hou., 1958, no writ hist.). We are also convinced that the appellant waived the defense of demand when she admitted liability under the guaranty agreement in her pleadings, as hereinafter shown.

In her original answer, filed on October 19, 1970, and again in her first amended original answer, filed on September 23, 1971, the appellant admitted the execution of the deed of trust, but specially denied that it was intended by the parties to secure "Connecticut General Deal" loans to Ro-

zelle, or any indebtedness other than the "cattle note" dated May 3, 1967. However, in both pleadings she made a purported tender of payment under the guaranty agreement in these words:

"Defendant admits the execution of the instrument which might commonly be called a Guaranty Agreement and attached to the Plaintiff's Original Petition as Exhibit C and admits and recognizes her obligation to the extent of $50,000 plus interest, and by this pleading does hereby tender to the Plaintiff such sum of money, conditioned upon the Plaintiff's releasing the aforesaid Deed of Trust (Exhibit B), Guaranty Agreement (Exhibit C) and dismissing this cause of action against her."

The defendant then prayed "that plaintiff take nothing by its suit other than the sum of money hereby tendered, and that she be dismissed and go hence with her costs . . . ."

In her second amended original answer, filed September 24, 1973, which was accompanied by a cross-action, the appellant acknowledged execution of the deed of trust and guaranty agreement; denied that the deed of trust was intended by the parties to secure Rozelle's debts; denied that she owed the Bank any sum under the guaranty agreement; and prayed that the Bank recover nothing. Finally, in her third amended original answer, filed on February 21, 1975, and her fourth amended original answer filed three days later, on February 24, 1975, which was the day the trial began, in language virtually identical to that used in her original answer and first amended original answer, the appellant again denied the deed of trust was meant to secure Rozelle's "Connecticut General Deal" debts; again acknowledged her obligation to the Bank under the guaranty agreement "to the extent of $50,000.00, plus interest"; verbally tendered "$50,000.00 plus interest found due, if any, on condition that the Plaintiff release the aforesaid Deed of Trust"; and prayed that she "go hence with her costs."

No money in any form was ever delivered to the Bank or deposited in the court in

connection with the appellant's pleaded "tender" until February 25, 1975, while the trial was in progress. On that day the appellant paid $55,000.00 into the registry of the court. The record is silent as to the circumstances or conditions of the deposit. In the judgment, this deposit was ordered paid to the Bank.

The appellant asserts that under the record the offer of payment made in her original answer constituted a valid tender of her obligation under the guaranty to the Bank which stopped the running of interest after October 19, 1970, the date on which the pleading was filed. We disagree.

 The burden of proving a valid tender rests upon the party asserting it. *Business Aircraft Corp. v. Electronic Commun., Inc.,* 391 S.W.2d 70, 71 (Tex.Civ.App. —San Antonio, 1965, writ ref., n. r. e.); *Cornelius v. Cook,* 213 S.W.2d 767, 770 (Tex. Civ.App.—Eastland, 1948, no writ hist.).

In *Baucum v. Great American Insurance Co. of New York,* 370 S.W.2d 863, 866 (Tex. Sup., 1963) the elements of a valid tender are set forth by our Supreme Court in these words:

"A tender is an unconditional offer by a debtor or obligor to pay another, in current coin of the realm, a sum not less in amount than that due on a specified debt or obligation . . . A valid and legal tender of money consists of the actual production of the funds and offer to pay the debt involved. The tenderer must relinquish possession of it for a sufficient time and under such circumstances as to enable the person to whom it is tendered, without special effort on his part, to acquire its possession."

The appellant's offer was not unconditional. It was expressly conditioned "upon the Plaintiff's releasing the Deed Of Trust, guaranty agreement, and dismissing this cause of action against her." At the time of the offer, on October 19, 1970, the deed of trust secured the "cattle note" which was not finally determined by the courts to have been paid (on January 8, 1968) until May 8, 1974. The release of the deed of trust at the time of the offer would

have prejudiced the Bank's rights on the "cattle note." Moreover, until the day of trial, no funds were actually produced by the appellant. Too, her offer was not a definite sum, but was "$50,000 *plus interest*" without specifying the rate of interest intended. The notes in question call for interest at the rate of 9½% per annum, but the appellant testified unequivocally that her offer of "interest" was at 7½% on the notes. For these reasons, if not for others also asserted by the appellee, the appellant's offer was not a valid and legal tender. It did not halt the running of interest.

In the light of the holdings above, many of the appellant's points and contentions are immaterial. The others have been duly considered and found to be without merit. All are overruled.

The judgment is affirmed.