**BUILDERS SAND, INC., Appellant,**

v.

**Mario TURTUR, Appellee.**

**No. C14–83–261CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 7, 1984.

See also, 654 S.W.2d 858.

Alan R. Lazor, Richie & Greenberg, Houston, for appellant.

Bernard Wm. Fischman, Lackshin & Nathan, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

JUNELL, Justice.

This is an appeal from a judgment that Builders Sand, Inc. take nothing in its suit to compel Mario Turtur, as seller, to specifically perform under the terms of an earnest money contract for the sale of realty. We affirm.

Builders Sand, Inc., Appellant, filed suit to compel Mario Turtur, Appellee, to convey real property in Galveston County. Appellant was to acquire the Galveston County lot and then exchange that lot with Peyton Waters, Sr. for a commercial lot owned by Waters in Harris County. Waters was to provide part of the purchase price of the Galveston County lot. This two-phased transaction was structured in order to minimize the tax consequences to Waters upon his selling of the Harris County lot.

An earnest money contract for the sale of Appellee's Galveston County lot was prepared by Ward A. Busey. Busey is an attorney and officer of Appellant. The contract consisted of a printed form with blanks filled in by Busey. At the insistence of Appellee, Busey had the clause "closing will be within seven (7) days of this contract" typed into the contract. The contract was signed by Busey for the Appellant and on May 14, 1982 by Appellee. Busey picked up the contract from Appellee's office on May 14th.

Busey testified that he took the signed earnest money contract and $1,000 earnest money check to the title company on the same date the contract was signed. On the following Tuesday, May 18th, Appellee called the title company to see if the contract and earnest money had been placed with the title company. An employee of the title company told Appellee that they had no record of receiving any such contract and earnest money. Appellee then called Waters to find out if Waters still wanted the Galveston County property. After he told Appellee that he was still interested, Waters called Appellant to find out the status of the transaction. Waters talked to either Busey or Larry Martin, Appellant's President, who told Waters that everything was being taken care of. The records of the title company show the earnest money and contract were received May 19th.

The title company notified Busey on May 20th that it would not be able to issue a title policy on the Galveston County property by May 21st. Busey called that same day to inform Appellee that the title policy would not be ready the next day and that there could be no closing. Busey testified that Appellee said that the delay in closing was no problem, that Appellee said he was going to be out of town anyway, and that the closing could be delayed until later. Appellee testified that he did not agree to any such extension and told Busey that if there was no closing on May 21st, the deal was off.

No closing took place at the title company on the 21st. However, Busey on that day delivered to the title company two personal checks as the purchase price for the

Turtur lot, one check from Appellant and one from Waters. Late in the afternoon of the same day, Busey hand delivered a letter to Appellee's office. The letter stated that it was reconfirming the earlier oral agreement to extend the time of closing until May 24th. When Appellee returned to his office on the 24th, he read the letter from Busey and sent a reply to both Busey and the title company. Appellee's reply letter states that there was no agreement to extend the time of the closing.

Even though, according to Busey's testimony, there was an agreement to extend the time for closing, Busey prepared and had recorded on May 24th in the Galveston County records an affidavit and lis pendens notice. On May 25, Busey and the title company each received their copies of Appellee's letter denying that an agreement to extend the time for closing had been reached.

Appellant then brought suit seeking specific enforcement of the earnest money contract. After a non-jury trial, judgment was entered that Appellant take nothing and that the affidavit and lis pendens notice recorded in the real property records of Galveston County were declared void and of no force. The trial court made Findings of Fact and Conclusions of Law. Appellant's Request for Additional and Amended Findings of Fact and Conclusions of Law was refused by the trial judge.

Appellant raises fifteen points of error in its appeal from the judgment of the trial court. Appellant's tenth point of error is that the trial court erred in concluding as a matter of law that "time is of the essence of an earnest money contract for the sale of real property where the contract provides that the transaction shall close on a specific date." Appellant's thirteenth point of error is that the trial court erred by concluding as a matter of law that Builders Sand committed an anticipatory breach of the earnest money contract between the parties. Appellant argues that time was not of the essence of this contract and that it committed no breach, either actual or anticipatory, of the contract by failing to have the closing on May 21st.

In an ordinary contract for the sale of land, where the sale is to be consummated on a future day, time is not of the essence unless such an intention is clearly manifested. *Helsley v. Anderson*, 519 S.W.2d 130, 132 (Tex.Civ.App.—Dallas 1975, no writ). The contract in *Helsley* contained a handwritten clause "closing to be on July 1, 1971." However, that phrase alone was not enough to make time of the essence. The court in *Helsley*, after looking at the record and evaluating the attendant circumstances which evidenced the parties' intent, could not agree with the trial court's conclusion that time was of the essence. However, after looking at the same factors in this case, we find that the trial court did not err in concluding that time was of the essence.

The contract between Appellant and Appellee expressly provided that "closing will be within seven (7) days of this contract." This clause was typed into the printed form and to the extent of any conflict the typed portion controls over the printed part. However, the mere designation of a particular date for performance does not per se make time of the essence. *Laredo Hides Co. v. H & H Meat Products Co.*, 513 S.W.2d 210 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). The designation of a particular date for performance is some indication that time is of the essence. When the intention to make time of the essence is not made clear by the language in the contract itself, the surrounding circumstances may be taken into consideration to make the determination. *Laredo Hides*, 513 S.W.2d at 217. Appellee testified as to the reason the closing had to be within seven days of the contract. Busey included the typewritten clause into the contract at the insistence of Appellee. Waters testified that Appellee did not disclose the urgency of closing the deal quickly. Waters only believed that Appellee wanted a contract to be signed quickly. Appellee testified that he told Waters several times that it was important that the transaction

be closed promptly and that Waters would have to perform quickly in order to get the price Appellee was offering to Waters. Appellee also testified that he "told Mr. Busey it's imperative that we close this deal before I leave for Hawaii, and I told him that we had to close it by the 21st of May because the last week in May I had many things I had to do before I left on our vacation."

■ Based upon the typewritten clause in the contract itself and the testimony in the record, the trial court had sufficient evidence to conclude that time was of the essence in this transaction. However, the trial court concluded that "Time is of the essence in an earnest money contract for the sale of real property where the contract provides that the transaction shall close on a specific and certain date." While the trial court should have based its conclusion on both the typewritten clause and the testimony in the record, this does not mean that the judgment of the trial court must be reversed. When a trial court renders an otherwise correct judgment, that judgment will not be set aside because of an incorrect conclusion of law. *Wirth, Ltd. v. Panhandle Pipe and Steel, Inc.*, 580 S.W.2d 58 (Tex.Civ.App.— Tyler 1979, no writ); *City of Corpus Christi v. Davis*, 575 S.W.2d 46 (Tex.Civ. App.—Corpus Christi 1978, no writ); *Mercedes Dusting Service, Inc. v. Evans*, 353 S.W.2d 894 (Tex.Civ.App.—San Antonio 1962, no writ). Appellant's tenth point of error is overruled. The question that remains is whether Appellant committed an anticipatory breach of the contract when Busey phoned and told Appellee that there could be no closing on May 21.

Appellant argues that the reason Busey called on May 20th was to inform Appellee that the title company was unable to deliver a title commitment by May 21st. Appellant asserts that under the contract the seller, not the purchaser, had the obligation to obtain a title policy. From this Appellant concludes that even if time was of the essence, the failure to obtain the title policy was Appellee's fault and did not indicate *Appellant's* refusal to perform the agreement.

■ The trial court found that "Mr. Busey assumed the responsibility for dealings with the title company and Defendant had no dealings with the title company...." The earnest money contract does provide that "Seller shall furnish a Policy of Title Insurance...." Appellee testified that Busey assumed the responsibilities for dealing with the title company. In its brief, Appellant does not challenge the factual sufficiency to support the court's finding that Busey had assumed the responsibility for dealing with the title company. Although Appellee, under the contract, initially had the duty to obtain the policy, Appellant's agent Busey assumed the obligation, and any failure to meet the obligation would be attributable to Appellant.

The evidence is uncontroverted that Busey informed Appellee on May 20th that the closing could not take place the next day due to a lack of a title insurance policy. Busey and Appellee differ as to what else was said. Appellee testified that he said that if Appellant could not close the next day the deal was off. Busey testified that Appellee was not opposed to closing later and that Appellee told him that he was going to be out of town on the 21st anyway. Busey testified that he and Appellee reached an agreement whereby the closing was put off until May 24th. Despite such an agreement, Busey took two checks, representing the purchase price of the Galveston County property, to the title company on May 21st. Appellant argues that it was ready, willing and able to perform and did tender performance on May 21st even though Busey testified that the parties agreed to postpone the date for closing.

■ The trial court, as trier of fact, was the judge of the credibility of the witnesses. In light of the record, the trial court was justified in believing Turtur's version of the May 20th phone conversation. The trial court concluded "A purchaser under an earnest money contract commits an anticipatory breach thereof when it informs the other party that it cannot comply with

the closing dates specifically stated in the earnest money contract, and the seller relies on and accepts such repudiation." Appellee testified that Busey said "that the closings would not take place on Friday because the title company was not ready...." Appellee responded by saying "then we don't have a deal...."

■■■ An anticipatory repudiation of a contract may consist of either words or actions by a party to a contract that indicate an intention that he or she is not going to perform the contract according to its terms in the future. *Baytown State Bank v. Don McMillian Leasing Company*, 551 S.W.2d 771 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e). The evidence shows a definite manifestation of intention not to perform by the date selected for closing, even though time was of the essence. As stated above, Busey assumed the duty of obtaining the title policy from the title company. Appellant cannot now justify its refusal to perform by saying that Appellee had that duty. The trial court was justified in finding that the statement by Busey to Appellee was a sufficient expression of intention not to comply with the contract. Appellee was justified in accepting the anticipatory breach or repudiation as final, and Appellee was relieved of any further obligations under the contract. *See generally Miller v. Puritan Fashions Corporation*, 516 S.W.2d 234, 237 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.). For the above reasons, Appellant's thirteenth point of error is overruled.

Assuming for the sake of argument that Busey's phone conversation with Appellee was not sufficient to constitute a repudiation of the contract, there is an additional reason why Appellant is not entitled to the equitable remedy of specific performance.

■■■ As a general proposition, a purchaser seeking to compel specific performance of a contract to sell realty need only plead and prove that it is ready, willing and able to pay the agreed consideration and perform the essence of the agreement and offer to do so. *Cowman v. Allen Monuments, Inc.*, 500 S.W.2d 223, 227 (Tex.Civ.

App.—Texarkana 1973, no writ). By three points of error, Appellant attacks the trial court's failure to make certain findings regarding whether Builders Sand was ready, willing and able to perform.

Appellant's first point of error is that the trial court erred in refusing to conclude as a matter of law that with respect to a demand of specific performance of a contract to sell real estate, it is only necessary that the purchaser plead and prove that he is ready, willing and able to pay the consideration and offer to perform the essence of the agreement. Appellant's second point of error is that the trial court erred in refusing to find that Appellant was ready, willing and able and attempted to pay the agreed upon purchase price in accordance with the terms of the earnest money contract on May 21, 1982. The third point of error states that the trial court erred in refusing to find that Appellant was ready, willing and able to perform on May 21st as the same was established as a matter of law and for the reason that the same was established by the great weight and preponderance of the evidence. We will consider these three points together.

There is no dispute that the Original Petition pleads that Appellant was ready, willing and able to complete the contract. The parties differ as to whether Appellant successfully proved that it was ready, willing and able. The earnest money contract expressly provides "The consideration for the sale and conveyance of said property is $60,000 payable as follows: *$60,000 cash* ... (emphasis added)." Appellant does not contend that it tendered the purchase price in cash, but argues that since Appellee failed to complain of the medium of payment, Appellee has waived any objection he may have had.

As stated above, Busey took two checks to the title company on May 21st. One check was written by Waters in the amount of $23,000. The other check was for $37,000 and was drawn on Builders Sand's account at Town and Country Bank. The balance of Appellant's account at the bank was less than the amount that the check

was written for, but officials of the bank testified that the check would have been honored regardless of the balance in the account. The trial court concluded that "an insufficient funds check tendered in performance of an earnest money contract does not constitute the required contractual tender of cash." Without regard to the issue of the "sufficiency" of the check, the trial court was correct in concluding that Appellant had not met the required contractual tender of cash.

█ A check does not constitute a sufficient tender of payment when the contract calls for payment in cash. *Moore v. Copeland*, 478 S.W.2d 573 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.). Appellant seeks to avoid the failure to tender cash by arguing that Appellee waived that objection by failing to object to the form of payment. *Gheen v. Diamond Shamrock Corp.*, 529 S.W.2d 289, 293 (Tex.Civ.App.—Waco 1975, no writ).

█ If Appellant, through the acts of Busey, committed an anticipatory breach of the contract and Appellee accepted such a repudiation, then any tender of payment the next day, by check or cash, was ineffective. However, if there was no repudiation, then Appellant has the burden of proving a valid tender. *Rozelle v. First National Bank in Dallas*, 535 S.W.2d 768 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.).

Since, on these facts, time was of the essence, Appellant had to produce evidence that its tender was in conformance with the contract. There is nothing in the record to indicate that Appellee waived the cash requirement. Appellee stated that he was not willing to accept a personal check at all and that he expected cash or a cashier's check on the date specified in the contract for closing. Appellee did not accept the checks as payment or reject them on May 21st because he was not at the title company since Busey told him there would be no closing on that date.

█ Appellant has failed to establish either as a matter of law or by the great weight and preponderance of the evidence that it was ready, willing and able, and tendered the agreed upon purchase price in accordance with the terms of the earnest money contract on May 21, 1982. The trial court did not err in refusing to so find. Points of error two and three are overruled.

We have no disagreement with the general statement that with respect to a demand of specific performance of a contract to sell real estate, it is only necessary that a purchaser plead and prove that he is ready, willing and able to pay the consideration and offer to perform the essence of the agreement. But such a statement is just a generalized statement of the law. Since Appellant failed to so prove, the trial court did not err in refusing to make such a conclusion. Appellant's first point of error is overruled.

█ Appellant's fifteenth point of error is that the trial court erred in failing to allow Appellant to put on evidence of attorney's fees. At the close of the evidence, the court and the attorneys for the parties agreed to allow counsel for Appellant to put on evidence of attorney's fees at a later time. Before such evidence was given, the trial court entered judgment that Appellant take nothing in its suit to compel specific performance. Since Appellant did not prevail in this suit, the trial court did not commit reversible error in failing to allow the evidence on attorney's fees.

Due to our disposition of Appellant's first, second, third, tenth, thirteenth and fifteenth points of error, we need not address the remaining points of error.

The judgment is affirmed.