Affirmed, in Part, and Reversed and Rendered, in Part, and
Memorandum Opinion filed November 12, 2010.

 

In
The

Fourteenth
Court of Appeals



NO.
14-09-00646-CV



Lee Shafer and
Pamela Shafer, Appellants

v.

Joel Gulliver
and Maryanne Gulliver, Appellees



On Appeal from the County Court at Law
No. 1

Fort Bend County, Texas

Trial Court Cause No. 06-CCV-029325



 

MEMORANDUM OPINION 

           
Appellants, Lee and Pamela Shafer, appeal from the trial court’s judgment
entered after a bench trial in favor of appellees,
Joel and Maryann Gulliver, on their claim for breach of contract.  The
trial court awarded the Gullivers specific
performance, interest damages, and attorney’s fees.  The Shafers challenge the trial court’s judgment in three
issues.  We affirm, in part, and reverse and render, in part. 

Background

           
The Shafers and the Gullivers
are neighbors in Fort Bend County.  The Shafers, who were in need of cash, offered to sell a piece
of undeveloped land that was contiguous to both the Shafers’
and Gullivers’ residences and was part of the Shafers’ homestead.  The Shafers
and Gullivers executed an earnest money contract on
January 21, 2005, for the sale of the property for $53,000.  The Gullivers wrote a check payable to Lee Shafer in the amount
of $5,000 for earnest money on January 21, 2005, and the Shafers
agreed to deliver a general warranty deed at closing in exchange for the
purchase price.  The closing date in the contract was September 30,
2005.  The Shafers represented in the contract
that as of the closing date there would be no liens on the property that could
not be satisfied out of the proceeds of the sale.  Lee Shafer explained
that the closing date was for nine months after the contract date because he
thought he could have the liens against the property released by that
time.  

           
By the September 30, 2005 closing date, there were still two liens on the
property totaling approximately $115,000 that could not be satisfied by the
sales price.  Because the Shafers had not
obtained releases of the liens by September 30, 2005, closing was not scheduled
and did not take place.  

           
Lee Shafer asked Joel Gulliver if they wanted to still purchase the property;
Gulliver said they did.  Lee Shafer testified that this conversation took
place in October 2005.  Joel Gulliver testified that this conversation
took place before September 30, 2005.  On December 28, 2005, Lee Shafer
delivered copies of the releases of the liens to the Gullivers. 
One release of lien was file stamped, while the other was not.  A week
later, Maryann Gulliver told the Shafers that they
would have the money and close in two weeks.  The Gullivers
did not tender the money in those two weeks.  Although the Gullivers did not initially intend to close through a title
company, they changed their minds after only one of the releases was file
stamped.  In March 2006, Maryann Gulliver called the Shafers
and told them that they were going to close at Stewart Title, which was the
title company chosen by the Shafers in the
contract.  

           
Title was opened at Stewart Title on March 14, 2006.  The Shafers gave the Gullivers a
file-stamped copy of the second release of lien on either March 24 or 25,
2006.  Closing was scheduled for March 31, 2006, but the parties did not
close on that date.  Another closing was scheduled for April 6 or 7, 2006,
but that closing was cancelled.  After Stewart Title informed Lee Shafer
that the closing was scheduled for April 10, 2006, he said he was not going to
go forward with selling the property.  The Gullivers
attended the April 10, 2006 closing; the Shafers did
not.  The Gullivers signed the closing
documents, left a cashier’s check in the amount of $48,000 payable to the Shafers with Stewart Title, and gave Stewart Title a check
in the amount of $1,100.95 for closing fees.  By letter dated April 7,
2006, the Shafers wrote the Gullivers,
returning the earnest money and advising that they were terminating the
contract.[1] 
The letter, which was sent by certified mail, was not mailed until April 11,
2006—after the April 10, 2006 closing.  The Gullivers
were not at home when two attempts were made to deliver the letter, and they
did not pick up the letter from the post office.  The Gullivers
ultimately found out about the Shafers’ letter and
check from Stewart Title.  

           
The Gullivers sued the Shafers
on April 26, 2006, for breach of contract, seeking specific performance, actual
and consequential damages, attorney’s fees, and pre- and post-judgment
interest.[2] 
The Shafers raised the affirmative defenses of
statute of frauds, estoppel, rescission, waiver,
failure to meet conditions precedent, and failure of consideration, and also
sought attorney’s fees.[3]

           
After a bench trial, the trial court found that the Shafers
had breached the contract both on September 30, 2005, and April 10, 2006, and
ordered specific performance.  The trial court also awarded interest
damages in the amount of $13,020.69, i.e., interest in the amount of: (1)
$264.97 on the $1,100.95 closing fees; (2) $1,203.37 on the $5,000 earnest
money; and (3) $11,552.35 on the $48,000 paid at closing, and attorney’s fees
in the amount of $30,838.91.  

           
In this appeal, the Shafers contend that the judgment
awarding specific performance, interest damages, and attorney’s fees should be
reversed because the evidence is legally and factually insufficient and the
conclusions of law are erroneous.  The Shafers
also contend that the trial court erred in admitting testimony of interest
damages and attorney’s fees for failure to disclose.  

Waiver

           
As an initial matter, the Gullivers argue that, by
approving and requesting entry of the findings of fact and conclusions of law,
the Shafers have waived their arguments and
objections to such findings and conclusions.  The Gullivers
argue that the now challenged findings of fact and conclusions of law were
discussed at length with the trial court and were not signed by the trial court
as simply accepting those submitted by the Gullivers. 
On May 29, 2009, the trial court held a hearing on a motion to enter findings
of fact and conclusions of law.  A review of the reporter’s record of the
hearing reflects that while there was some give and take regarding certain
language in the proposed findings and whether certain proposed findings and
conclusions were findings of fact or conclusions of law, it does not show that
the Shafers waived their right to challenge those
findings of fact and conclusions of law that they have challenged on
appeal.  

           
It is generally true that a party cannot appeal from a judgment to which it has
consented or agreed absent an allegation and proof of fraud, collusion, or
misrepresentation.  Chang v. Linh
Nguyen, 81 S.W.3d 314, 316 n.1 (Tex. App.—Houston [14th Dist.] 2001, no
pet.).  A party’s consent to a trial court’s entry of judgment
waives any error in the judgment, except jurisdictional error.  Id. 
To have a valid consent judgment, each party must explicitly and unmistakably
give its consent.  Id.  This court has held that the phrase
“approved as to form and substance” standing alone does not transform a
judgment into a consent judgment.  Id.  In order for a
judgment to be a consent judgment, the body must suggest, for instance, that
the case had been settled or that the judgment was rendered by consent.  Id. 
In Chang, we held that the appellant had not waived her appeal where her
attorney approved a take nothing judgment as to “form and substance” and there
was nothing more in the record to show that the parties had settled or entered
the judgment by consent or the like.  Id.  Similarly, the
language “approved and entry requested” does not demonstrate that the Shafers have waived their right to challenge the findings
of fact and conclusions of law on appeal.  Moreover, as in Chang,
there is nothing in this record to show that the parties entered into a consent or an agreed judgment.  

Standard of Review

           
Findings of fact entered in a case tried to the court are of the same force and
dignity as a jury’s verdict on jury questions.  Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). 
We apply the same standards in reviewing the legal and factual sufficiency of
the evidence supporting the trial court’s fact findings as we do when reviewing
the legal and factual sufficiency of the evidence supporting a jury’s answer to
a jury question.  Ortiz v. Jones, 917 S.W.2d 770,
772 (Tex. 1996) (per curiam).  

           
In reviewing the legal sufficiency of the evidence, we view the evidence in the
light favorable to the fact finding, crediting favorable evidence if reasonable
persons could, and disregarding contrary evidence unless reasonable persons
could not.  City of Keller v. Wilson, 168 S.W.3d
802, 807 (Tex. 2005).  We may not sustain a legal sufficiency, or
“no evidence,” point unless the record demonstrates (1) a complete absence of a
vital fact, (2) the court is barred by the rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact, (3) the
evidence to prove a vital fact is no more than a scintilla, or (4) the evidence
established conclusively the opposite of the vital fact.  Id. at 810.  

           
To evaluate the factual sufficiency of the evidence to support a finding, we
consider all the evidence and will set aside the finding only if the evidence
supporting the finding is so weak or so against the overwhelming weight of the
evidence that the finding is clearly wrong and unjust.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406–07 (Tex. 1998); Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). 


           
Unchallenged findings of fact are binding on the appellate court unless the
contrary is established as a matter of law, or if there is no evidence to
support the finding.  McGalliard v. Kuhlmann, 722 S.W.2d 694, 696
(Tex. 1986).  

           
We review the trial court’s conclusions of law de novo.  Busch v. Hudson & Keyse, LLC,
312 S.W.3d 294, 299 (Tex. App.—Houston [14th Dist.] 2010, no pet.). 
We review conclusions of law to determine whether the conclusions drawn from
the facts are correct.  Zagorski v. Zagorski, 116 S.W.3d 309, 314 (Tex. App.—Houston [14th
Dist.] 2003, pet. denied) (op. on reh’g).  

Breach of Contract

           
In their first issue, the Shafers assert that they
did not breach the contract on September 30, 2005, because time was of the
essence and the Gullivers did not timely tender
actual performance.  The Shafers also contend
that they did not breach the contract on April 10, 2006, because the contract
expired on September 30, 2005, and any attempted oral extension of the contract
was barred by the statute of frauds.  The Shafers
challenge the legal and factual sufficiency of the following findings of fact
with regard to the Gullivers’ breach of contract
claim:

7.         that closing did not take place on September 30, 2005
because [the Shafers] could not obtain release of two
outstanding liens and, therefore, could not provide a policy of title
insurance.

8.         On
September 30, 2005, [the Gullivers] had timely
performed all conditions precedent to consummation of the Contract.

*       
*        *

10.       On September 30,
2005, [the Shafers] breached the Contract.

11.       After September 30,
2005, the parties jointly and orally waived the September 30, 2005 closing, in
order to allow [the Shafers] to clear the liens
against the Property.

*       
*        *

20.       On April 10, 2006,
[the Shafers] breached the Unimproved Property
Contract dated January 21, 2005, which was executed by all parties, by failing
to convey the property subject of [sic ] the Contract to [the Gullivers].

21.       [The Gullivers] are entitled to Specific Performance under the
terms of the Contract.

*       
*        *

42.       Time was not of the
essence in this matter.

           
The Shafers challenged the following conclusions of
law with regard to the Gullivers’ breach of contract
claim:

1.         Texas
Business and Commerce Code Section §26.01 did not apply and the Parties were
not required to reduce to writing an agreement for extending the time for
performance of the contract.

*       
*        *

5.         On
September 30, 2005, [the Shafers] breached the
Contract.

6.         On
September 30, 2005, [the Gullivers were] not in
breach of the Contract.

7.         On April
10, 2006, [the Shafers] breached the Contract.

8.        
Constructive tender was effective on September 30, 2005.

9.         Specific
Performance is the proper remedy pursuant to the Contract.

           
A legally enforceable contract consists of (1) an offer, (2) acceptance in
strict compliance with the terms of the offer, (3) a meeting of the minds, (4)
each party’s consent to the terms, and (5) execution and delivery of the
contract with the intent that it be mutual and binding.  Parker Drilling Co. v. Romfor Supply
Co., 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. filed). 
To recover for breach of contract, a plaintiff must show (1) the existence of a
valid contract, (2) the plaintiff performed or tendered performance, (3) the
defendant breached the contract, and (4) the plaintiff suffered damages as a
result of the defendant’s breach.  Id.  

September
30, 2005 Breach

           
The Shafers contend that time was of the essence in
the sale of the property.  Therefore, according to the Shafers,
when the Gullivers did not tender actual performance
on September 30, 2005, the contract expired, and the Gullivers
were not entitled to specific performance.  

           
In an ordinary contract for the sale of land, where the sale is to be
consummated on a future day, time is not of the essence unless such an
intention is clearly manifested.  Builders Sand, Inc.
v. Turtur, 678 S.W.2d 115, 118 (Tex. App.—Houston
[14th Dist.] 1984, no writ).  The designation of a particular date
for performance is some indication that time is of the essence, but it is not
dispositive.  Kennedy Ship & Repair, L.P. v. Pham,
210 S.W.3d 11, 19 (Tex. App.—Houston [14th Dist.] 2006, no pet.); Cadle Co. v. Castle, 913 S.W.2d 627, 637
(Tex. App.—Dallas 1995, writ denied).  The contract must expressly
make time of the essence or there must be something in the nature or purpose of
the contract and the circumstances surrounding it making it apparent that the
parties intended that time be of the essence.  Kennedy Ship &
Repair, L.P., 210 S.W.3d at 19; Mun. Admin. Servs. Inc. v. City of Beaumont, 969
S.W.2d 31, 36 (Tex. App.—Texarkana 1998, no pet.).  A
time of the essence provision may be waived.  Kennedy Ship &
Repair, L.P., S.W.3d at 20; 17090 Parkway, Ltd. v. McDavid,
80 S.W.3d 252, 255 (Tex. App.—Dallas 2002, pet. denied).  “A waiver of
time of performance of a contract will result from any act that induces the
opposite party to believe that exact performance within the time designated in
the contract will not be insisted upon.”  Laredo Hides Co. v. H & H
Meat Prods. Co., 513 S.W.2d
210, 218 (Tex. Civ. App.—Corpus Christi 1974, writ ref’d
n.r.e.).  

           
The Shafers admit that the contract does not
specifically state that time is of the essence, but assert that the purpose of
the sale and the circumstances surrounding the sale made it apparent that time
was of the essence.  Section 9A of the contract stated that “[t]he closing
of the sale will be on September 30th, 2005, or within 7 days after objection
to matters disclosed in the Commitment or by the survey have been cured,
whichever date is later (Closing Date).”  The Shafers
also contend that the evidence showed that the Gullivers
knew that they needed to sell the property quickly due to their financial
problems.  

           
The Gullivers assert that time was not of the
essence.  The Gullivers also argue that the Shafers waived any claim that time was of the essence by
their actions.  Although the parties entered the contract on January 21,
2005, the Shafers did not set the closing until
September 2005, because they could not convey clear title as required by the contract. 
At that point, the parties agreed to continue with the sale of the property,
and the Shafers continued in their efforts to clear
the liens on the property.  The Shafers notified
the Gullivers in early January 2006, that they had
cleared the liens.  Closings on the property were scheduled in March and
April 2006.  Lee Shafer testified that he never scheduled or pressed for a
closing and never said to the Gullivers anything to
the effect of “Hey, guys, let’s get this deal done.”  Under these facts,
we conclude that time was not of the essence.  

           
Notwithstanding that time was not of the essence, the Shafers
further assert that the Gullivers are not entitled to
specific performance because they did not tender the actual purchase price on September
30, 2005.[4] 
The Gullivers argue that actual tender was impossible
on September 30, 2005, and therefore, constructive tender was all that was
required.  We agree with the Gullivers’
position.  

           
Specific performance is an equitable remedy committed to the trial court’s
discretion.  Bell v. Rudd, 144 Tex. 491, 191
S.W.2d 841, 843 (1946); Chapman v. Olbrich,
217 S.W.3d 482, 491 (Tex. App.—Houston [14th Dist.] 2006, no pet.).
 A party seeking specific performance of a contract must prove that he has
diligently and timely performed, or tendered performance of, all obligations
under the contract.  Chapman, 217 S.W.3d at 491; Riley
v. Powell, 665 S.W.2d 578, 581 (Tex. App.—Fort Worth 1984, writ ref’d n.r.e.). 
Generally, it is a prerequisite to specific performance that the buyer of land
shall have made an actual tender of the purchase price—an unconditional offer
to pay a sum not less than what the contract requires.  Wilson, 715 S.W.2d at 822.  “Because the proceeding
is equitable in nature, this requirement is forgiven and a constructive tender
will suffice when the acts of the defendant or the situation of the property is
such that an actual tender would have been a useless act, an idle
ceremony, or wholly nugatory.”  Id.
(emphasis in original).  

           
Where the contract requires a deed to be delivered upon tender of the purchase
price, the purpose of a tender is two-fold.  Roundville
Partners, LLC v. Jones, 118 S.W.3d 73, 79 (Tex. App.—Austin 2003, pet.
denied); Wilson, 715 S.W.2d at 821.  First, the valid tender of the
purchase price invokes the seller’s obligation to convey and places him in
default if he fails to do so.  Roundville
Partners, LLC, 118 S.W.3d at 79; Wilson,
715 S.W.2d at 821.  Second, the tender satisfies the fundamental
prerequisite of specific performance, i.e., that the buyer demonstrate he has
done or offered to do, or is then ready and willing to do, all the essential
and material acts which the contract requires of him.  Roundville
Partners, LLC, 118 S.W.3d at 79; Wilson,
715 S.W.2d at 821.  

           
Pamela Shafer testified that they did not close on September 30, 2005, because
the liens on the property had not been released.  Lee Shafer similarly
testified that they “couldn’t produce clear title” on September 30, 2005. 
Furthermore, the Shafers do not challenge the trial
court’s finding that “[o]n September 30, 2005, liens against the property
exceeded funds from closing and, therefore, could not have been satisfied out
of the proceeds of the sale.”  Lee Shafer also testified that he was not
at home on September 30, 2005, and that he did not leave a signed deed with
Pamela Shafer with which to close and, therefore, they could not have closed on
that date even if the title had been cleared.  Lee Shafer further
testified that he did not schedule a closing on September 30, 2005, and did not
advise the Gullivers that he could not clear title on
that date.  Moreover, Maryann Gulliver testified that they had the funds
to close available in their bank account on September 30, 2005.  We
conclude that because the evidence shows that actual tender would have been a
useless act, constructive tender by the Gullivers was
all that was required on September 30, 2005.  

           
The Shafers further challenge the trial court’s
finding that the Gullivers had performed all
conditions precedent.  The Gullivers respond
that they satisfied the sole condition precedent to the contract, i.e., payment
of the earnest money on January 21, 2005.  We agree.  Lee Shafer
acknowledged that the Gullivers paid the earnest
money on January 21, 2005, and the Shafers do not
challenge the trial court’s finding that the Gullivers
“timely paid the required earnest money to” the Shafers. 
The Shafers suggest that the Gullivers
were required to provide notice that they stood ready to perform. 
However, there is no provision in the contract requiring the Gullivers to provide written notice that they are able to
perform.  Moreover, this court already concluded that the only condition
precedent in the contract was the payment of the earnest money.  See
Gulliver, 2008 WL 123872, at *4 n.2.  

           
The Gullivers were not required to tender actual
performance on September 30, 2005, because such tender would have been a useless
act.  In addition, the Gullivers satisfied the
only condition precedent in the contract by paying the earnest money on January
21, 2005.  Accordingly, we conclude that the evidence is legally and
factually sufficient to support the finding that the Shafers
breached the contract on September 30, 2005.  

April 10,
2006 Breach

The Shafers also contend
that they did not breach the contract on April 10, 2006, because the contract
expired on September 30, 2005.  The Shafers
assert that, when the closing did not take place on September 30, 2005, the
contract expired, and the parties’ oral agreement to extend the contract for
the sale of the property is unenforceable because it was required to be in
writing pursuant to the statute of frauds.  Under the statute of frauds, a
contract for the sale of real estate must be in writing and signed by the party
charged with compliance with its terms.  Tex. Bus. & Com. Code Ann. § 26.01(a)(4)
(West 2009).  As an exception to the general rule against oral
modification of contracts covered by the statute of frauds, the parties to a
written contract may agree orally to extend the time of performance, so long as
the oral agreement is made before the expiration of the written
agreement.  Dracopoulas v. Rachal, 411 S.W.2d 719, 721 (Tex. 1967); Aguiar v. Segal, 167 S.W.3d 443, 451 (Tex.
App.—Houston [14th Dist.] 2005, pet. denied); Triton Commercial Props., Ltd.
v. Norwest Bank Tex., N.A., 1 S.W.3d 814, 818 (Tex. App.—Corpus Christi
1999, pet. denied); Troutman v. Interstate Promotional Printing Co., 717
S.W.2d 428, 429 (Tex. App.—San Antonio 1986, writ ref’d
n.r.e.).  

The Shafers contend that,
because the parties orally agreed to extend the contract in October 2005, after
the September 30, 2005 closing date, the statute of frauds requires that it be
in writing.  The Gullivers contend that no
additional writing was necessary because section 9A of the contract contained
the following disjunctive “or” clause: “The closing of the sale will be on or
before September 30, 2005, or within 7 days after objections to matters
disclosed in the Commitment or by the survey have been cured, whichever date is
later (Closing Date).”  Therefore, the Gullivers
contend that this clause allowed the contract to extend beyond the September
30, 2005 closing date, based upon the Shafers’
inability to provide clear title, and the parties continued the contract
pursuant to this clause.  We agree.  Approximately $115,000 in liens
against the property existed on September 30, 2005, and therefore, the liens
could not have been satisfied out the proceeds of the sale.  Because no
title commitment had been requested, the disjunctive provision of the contract
had not been invoked on September 30, 2005.  Thus, the contract, by its
own terms, extended the closing date beyond September 30, 2005, and no
agreement was necessary to extend the time for performance.[5]  

           
The Gullivers also argue that the contract could not
have expired on September 30, 2005.  The Gullivers
assert that, as the buyers, it was their option to terminate the
contract.  In section 19 of the contract, “Seller represents that as of
the Closing Date (a) there will be no liens . . . against the property which
will not be satisfied out of the sales proceeds. . . . If any representation of
Seller in this contract is untrue on the Closing Date, Buyer may terminate this
contract and the earnest money will be refunded to Buyer.”  Under section
15, if the seller defaults, “Buyer may (a) enforce specific performance.”

           
The Gullivers argue that, notwithstanding the breach
on September 30, 2005, the parties agreed to re-affirm the contract post-breach
and continue the contract pursuant to its terms.[6]  As explained above, the contract,
by its own terms, could be extended beyond September 30, 2005.  The Gullivers wanted to go forward with the sale and refused
return of the earnest money.  Therefore, the parties continued the
contract to allow the Shafers to clear the liens
against the property.[7] 
Lee Shafer testified that he “thought the contract had been extended,” intended
to sell the property to the Gullivers, and was
“prepared to sell” the property on January 20, February 15, March 1, March 15,
and April 1, 2006.[8] 


           
Section 6D of the contract provides: “Within 10 days after Buyer receives the
Commitment, Exception Documents and the survey, Buyer may object in writing to
(1) defects, exceptions or encumbrances to title: . . . disclosed in the
Commitment . . . .”  Stewart Title issued the title commitment on March
27, 2006.  The Gullivers received the final
title commitment from Stewart Title at closing on April 10, 2006.  The Gullivers made no objection subsequent to receiving the
Commitment.  

           
A closing was scheduled for March 31, 2006, but was cancelled, and another
closing was scheduled for April 6 or 7, 2006.  On April 5, 2006, Stewart
Title notified Lee Shafer the April 6 or 7 closing was cancelled and was
rescheduled for April 10, 2006.  Lee Shafer advised Stewart Title that he
was not going to sell the property because the contract had expired. 
Similarly, when Maryann Gulliver called Lee Shafer on April 7, 2006, he told
her that they were not going to sell the property.  The Gullivers appeared at the April 10, 2006 closing and
tendered the purchase price, which invoked the Shafers’
obligation to convey the property and placed them in default for failure to do
so.  See Roundville Partners, LLC, 118 S.W.3d at 79; Wilson, 715 S.W.2d at 821.  

           
The Shafers wrote a letter dated April 7, 2006, to
the Gullivers advising them that because the Gullivers had failed to close on January 19, 2006, they
were electing to terminate the contract and were returning the earnest
money.  However, the Shafers did not mail the
letter until April 11, 2006—the day after closing.[9]  Moreover, there is no provision in
the contract allowing for rescission or revocation after acceptance.  Nor
was there rescission by mutual understanding because the Gullivers
intended to proceed with the sale.  See March v.
Orville Carr Assocs., Inc., 433 S.W.2d 928, 931 (Tex. Civ. App.—San Antonio
1968, writ ref’d n.r.e.)
(explaining that rescission of contract by mutual consent does not require
formal agreement, but may result from any act or any course of conduct of
parties which clearly indicates their mutual understanding that contract is
abrogated or terminated, or from acquiescence of one party in its explicit
repudiation by other).  

We conclude that the evidence is legally and
factually sufficient to support the trial court’s finding that the Shafers breached the contract on April 10, 2006.  Accordingly, the Shafers’ first issue is
overruled.  

Interest Damages

           
In their second issue, the Shafers challenge the
legal sufficiency of evidence of the following findings of fact with respect to
the trial court’s judgment on interest damages and attorney’s fees:

33.       Reasonable attorney
fees and costs incurred by [the Gullivers], and
proven at trial are $30,838.91.

34.       Interest on the
$5,000 earnest money payment of [the Gullivers], from
April 10, 2006 through May 15, 2009 amounts to $1,203.37 and was proven at
trial.

35.       Interest on the
$1,100.95 closing fees paid by [the Gullivers], from
April 10, 2006 through May 15, 2009 amounts to $264.97 and was proven at trial.

36.       Interest on the
$48,000 closing payment tendered paid by [the Gullivers],
from April 10, 2006 through May 15, 2009 amounts to $11,552.35 and was proven
at trial.

37.       Total lost interest
on the sums of $5,000 and $48,000 and $1,100.95 at the legal rate from April
10, 200[6] through May 15, 200[9] is $13,020.69.

           
The Shafers contend that the Gullivers
are not entitled to interest damages because they did not
show that they incurred any expenses as a result of the Shafers’
late performance.  The general rule is that damages constitute an
alternative remedy available only where specific performance either is not
sought or not available.  Foust v. Hanson, 612
S.W.2d 251, 253 (Tex. Civ. App.—Beaumont 1981, no writ).  In
appropriate circumstances, the court may order, in addition to specific
performance, payment of expenses incurred by the plaintiff as a result of the
defendant’s late performance.  Id.  When specific performance
of a contract to convey real property is granted, the court will enforce the
equities of the parties in such a manner as to put them as nearly as possible
in the position they would have occupied had the conveyance been made when
required by the contract.  Heritage Hous. Corp. v. Ferguson, 674 S.W.2d 363, 366 (Tex. App.—Dallas 1984, writ ref’d n.r.e.). 
That date having passed, the court, in order to relate the performance back to
the contract date, equalizes any losses occasioned by the delay.  Id. 


           
In Foust, the defendant agreed to construct, and the plaintiffs agreed
to purchase, a house to be completed on or before October 1, but it was not
completed until December.  612 S.W.2d at 252. 
The contract required the plaintiffs to obtain a mortgage loan for thirty years
at the prevailing rate.  Id. at 254. 
The commitment obtained by the plaintiffs expired on October 4, and the
plaintiffs obtained another commitment at a higher interest rate.  Id. 
The plaintiffs produced evidence of the difference in the monthly mortgage rate
for the life of the loan due to the higher interest rate, and court of appeals
affirmed the award.  Id.  

           
In Heritage Housing Corp., the jury found that the plaintiff had
contracted to purchase a house that was to be finished by a certain time, but
it was not.  674 S.W.2d at 366.  The court
of appeals affirmed the award of rental value from the date the plaintiff
tendered the balance of the purchase price and demanded specific performance,
but reversed the award for rental value prior to the time the plaintiff tendered
performance as part of the accounting between the parties incidental to the
grant of specific performance.  Id.  

           
In Claflin v. Hillock Homes, Inc., the
court of appeals affirmed the award to the vendor for its carrying charges—the
interest paid by the vendor on its interim building financing between the date
of the breach and the lawsuit—on the original construction loan.  See
645 S.W.2d 629, 635–36 (Tex. App.—Austin 1983, writ ref’d
n.r.e.).  The vendor had planned on paying off
the interim construction loan with the proceeds of the sale to the
defendant.  Id. at 632.  The vendor
had presented evidence that it was virtually impossible to rent the home
because there was no rental market for the residence.  Id.
at 636.  

           
Here, unlike Foust, Heritage Housing, and Claflin,
the Gullivers did not present any evidence to show
they were entitled to interest damages such as having to pay a higher mortgage,
rent, or carrying charges as a result of the Shafers’
breach of the contract.  Lost interest from what they should have earned
on their money does not fall within those categories of damages a party may
recover in addition to specific performance.  Therefore, the Gullivers are not entitled to interest damages. The Shafers’ second issue regarding interest damages is
sustained.[10]
 

Attorney’s Fees

           
In their third issue, the Shafers contend that,
because the Gullivers failed to disclose the amount
and method of calculating attorney’s fees in response to the Shafers’ requests for disclosure, evidence of attorney’s
fees should not have been admitted.[11] 
The Shafers served the Gullivers
with requests for disclosure pursuant to Rule 194 of the Texas Rules of Civil
Procedure.  Tex. R. Civ. P.
194.  In their May 2, 2009 response to the Shafers’
request for “[t]he amounts and any methods of calculating economic damages,”
the Gullivers responded: “Reasonable and necessary
attorney fees and costs both through trial and if necessary through
appeal.”  

           
The admission or exclusion of evidence rests within the sound discretion of the
trial court.  Bay Area Healthcare Group, Ltd. v. McShane, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam).  A trial court abuses its discretion
in admitting or excluding evidence if it acts without reference to any guiding
rules or principles or if the act complained of is arbitrary and
unreasonable.  Carpenter v. Cimarron Hydrocarbons Corp., 98 S.W.3d
682, 687 (Tex. 2002).  To reverse a judgment based on a claimed error in
admitting or excluding evidence, the appellant must show that the error
probably resulted in an improper judgment.  Interstate
Northborough P’ship v. State, 66 S.W.3d 213, 220
(Tex. 2001).  If there is a legitimate basis for the trial court’s
evidentiary ruling, the appellate court must uphold the ruling.  Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43
(Tex. 1998).  

           
Rule 194.2(d) provides that a party may request disclosure of “the amount and
any method of calculating economic damages.”  Tex. R. Civ. P.
194.2(d).  Comment 2 to Rule 194 provides that Rule
194.2(d) is “intended to require disclosure of a party’s basic assertions,
whether in prosecution of claims or in defense.”  Tex. R. Civ. P.
194 cmt. 2.  “A party who
fails to make, amend, or supplement a discovery response in a timely manner may
not introduce in evidence the material or information that was not timely
disclosed . . . unless the court finds that: (1) there was good cause for the
failure to timely make, amend, or supplement the discovery response; or (2) the
failure to timely make, amend, or supplement the discovery response will not
unfairly surprise or unfairly prejudice the other parties.”  Tex. R. Civ. P. 193.6(a)(1), (2).  “The burden of establishing good cause or
the lack of unfair surprise or unfair prejudice is on the party seeking to
introduce the evidence.”  Tex. R. Civ. P. 193.6(b). 


           
The attorney’s fees incurred by the Gullivers for
prosecuting their breach of contract claim against the Shafers
are not economic damages.  Attorney’s fees are not recoverable in Texas
unless allowed by statute or by contract.  Dallas
Cent. Appraisal Dist. v. Seven Inv. Co., 835 S.W.2d 75, 77
(Tex. 1992); see also Metro. Life Ins. Co. v. Haney, 987 S.W.2d 236,
243–44 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (op. on reh’g) (“Attorney’s fees . . . are not recoverable on tort
claims.”).  Thus, Texas law differentiates between attorney’s fees and
damages.  

Recovery
of attorney’s fees is dependent upon a party first prevailing on a claim which
allows the recovery of attorney’s fees.  See, e.g., Green Int’l,
Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997) (“To recover attorney’s fees
under Section 38.001, a party must (1) prevail on a cause of action for which
attorney’s fees are recoverable, and (2) recover damages.”) (emphasis added).  Rule 194.2(d) specifically refers to
“damages.”  Tex. R.
Civ. P. 194.2(d). 
Therefore, the Gullivers were not required to
disclose the method of calculating attorney’s fees pursuant to Rule 194.2, and
the trial court did not abuse its discretion by admitting testimony by the Gullivers’ counsel on attorney’s fees.[12]  The Shafers’
third issue is overruled.[13] 


Conclusion

In summary, we find that (1) the evidence is legally
and factually sufficient to support the trial court’s findings that the Shafers breached the contract on September 30, 2005, and
April 10, 2006, and the Gullivers are entitled to
specific performance; and (2) the trial court did not abuse its discretion by
admitting evidence of the Gullivers’ attorney’s
fees.  We affirm those portions of the trial court’s judgment awarding
specific performance and attorney’s fees.  We further find that the Gullivers are not entitled to interest damages.  We
reverse that portion of the judgment awarding the Gullivers
interest damages and render judgment that they take nothing on their claim for
interest damages.  Accordingly, we affirm, in part, and reverse and
render, in part.

 

                                                                                   


                                                                       
/s/        Leslie B. Yates

                                                                                   
Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Yates and Sullivan.

 














[1]
The April 7, 2006 letter states:

All objections to the
closing of the land transaction were met on or about January 4, 2006. 
Pursuant to paragraph 15, closing was to take place on or before January 19,
2006.

Because you have failed to
close as called for by the Earnest Money Contract, we elect to terminate the
Earnest Money Contract.  According to the terms of the Earnest Money
Contract, we have a right to keep the Earnest Money, but we are electing to
return it to you.





[2]
In their fourth amended petition filed on April 22, 2009, the Gullivers added claims with regard to the earnest money for
breach of fiduciary duty, breach of constructive trust, breach of the duty of
good faith and fair dealing, and malice.  





[3]
This is the second time this case has been before this court.  See
Gulliver v. Shafer, No. 14-07-00217-CV, 2008 WL 123872 (Tex. App.—Houston
[14th Dist.] 2008, no pet.) (mem.
op.).  The trial court granted summary judgment in favor of the Shafers.  Id. at *1. 
On appeal, this court reversed the judgment and remanded the case to the trial
court.  Id. at *5.  





[4]
When time is of the essence, the buyer must make an actual tender of the price and
demand of the deed within the time allowed by the contract.  Wilson v. Klein, 715 S.W.2d 814, 822 (Tex. App.—Austin 1986,
writ ref’d n.r.e.).





[5]
The Shafers also argue that an agreement for the
extension of time for performance of a contract should be supported by separate
and distinct consideration, but there is no evidence that any additional
consideration was provided to support an extension of the contract.  As
explained above, the contract, by its own terms, extended the time for
performance beyond September 30, 2005.  Therefore, we do not need to
address this argument.  





[6]
“‘It is a fundamental proposition of contract law
that when one party breaches its contract, the other party is put to an
election of continuing or ceasing performance, any action indicating an
intention to continue will operate as a conclusive choice, not depriving the
injured party of his cause of action for the breach which has already taken
place, depriving him only of any excuse for ceasing performance on his own
part.’”  Compass Bank v. MFP Fin. Servs.,
Inc., 152 S.W.3d 844, 858 (Tex. App.—Dallas 2005, pet. denied) (quoting Cox,
Colton, Stoner, Starr & Co., P.C. v. Deloitte, Haskins & Sells, 672
S.W.2d 282, 287 (Tex. App.—El Paso 1984, no writ)).  





[7]
Section 19 of the contract provided that “[i]f any
representation of Seller in this contract is untrue on the Closing Date, Buyer may
terminate this contract and the earnest money will be refunded to Buyer.” 
(Emphasis added).  The liens against the property could not be satisfied
out of the sale proceeds on September 30, 2005.  





[8]
The Shafers do not challenge the trial court’s finding
that they “intended to sell the property at issue during the period from
September 30, 2005 through April 1, 2006 by virtue of [Lee Shafer’s] express
testimony.”





[9]
The Shafers do not challenge the trial court’s
findings that they mailed a “putative rescission letter” dated April 7, 2006,
to the Gullivers on April 11, 2006, the day after the
scheduled closing on April 10, 2006, at Stewart Title’s office; or that the Shafers never sent the Gullivers
“any writing purporting to rescind the offer to sell the Property prior to
April 11, 2006”; or that the Gullivers never accepted
the Shafers’ offer to return the earnest money.





[10]
With respect to their no-evidence challenge to the trial court’s finding on
reasonableness of attorney’s fees and costs, the Shafers
have not provided any argument, authorities, or citations to the record.  See
Tex. R. App. P. 38.1(i). 
The Shafers have waived their second issue regarding
attorney’s fees and, therefore, it is overruled.  





[11]
The Shafers also assert that the Gullivers
failed to disclose the amount and method of calculating the interest damages in
response to the Rule 194 request for disclsoure. 
Because we have concluded that the Gullivers are not
entitled to interest damages in addition to specific performance, we need not
address this argument.  





[12]
The Shafers rely on C.A. Walker Construction
Company v. J.P. Southwest Concrete, Inc., in support of their contention
that the Gullivers were required to disclose the
method of calculating their attorney’s fees.  See
No. 01-07-00904-CV, 2009 WL 884754 (Tex. App.—Houston [1st Dist.] Apr. 2, 2009, no pet.) (mem. op.).  In that case, the court held that
post-trial requests for damages and attorney’s fees violated Rule 194.2(d)
because J.P. Southwest Center failed to disclose the amount and method of
calculating economic damages.  Id. at *7. 
That case, however, is distinguishable because J.P. sought recovery of the
attorney’s fees it paid to a third party in a separate lawsuit.  Id. at *2, *7.





[13]
Relators do not raise any complaint about the failure
to disclose attorney’s fees with regard to the disclosure of the Gullivers’ testifying expert on attorney’s fees.  See
Tex. R. Civ. P. 194.2(f).