### WARREN v. RUSSELL.
### No. 9669.

Court of Civil Appeals of Texas. Austin.

Nov. 12, 1947.

Rehearing Denied Dec. 1, 1947.

Jno. T. Spann, of San Antonio, for appellant.

A. H. Lumpkin, and Saunders & Saunders, all of San Antonio, for appellee.

McCLENDON, Chief Justice.

Warren sued Russell for $525, broker's commission of 5% upon a written contract of sale of residence property, dated July 26, 1946, and signed by Russell, as seller, Alley, as buyer, and Fasto, as escrow agent, the pertinent portions of which read:

"The purchase price is $10,500, payable as follows:

"$3000 cash, of which Purchaser has deposited with $500 as part payment, receipt of which is hereby acknowledged by Escrow Agent: Subject to making a loa— (loan) of $7500 oj (on) said property.

\* \* \* \* \* \*

"Seller agrees to pay T. C. Warren 5% commission on said sale."

Trial to court; judgment for Russell; Warren appeals.

The salient facts (uncontradicted except as to who was to procure the $7500 loan, and Warren's abandonment of the contract and authorization of return by Fasto of Alley's $500 earnest money check) were: In May 1946 Russell listed the property with Frye at $10,500 cash. He also advertised it for sale. Warren also advertised it, but had no listing. In this way he contacted Alley and procured the July 26 contract. He applied to several loan organizations but was unable to get a "commitment" above $6000. Alley was unable to procure a loan himself. Warren conceded to Russell that the deal could not be financed, and agreed that Alley's $500 check be returned

to him. This was done. Frye stepped into the picture at this juncture, and procured financing of the sale so as to yield Russell his $10,500 cash, less the 5% commission, which was consummated under a contract dated August 7, 1946, providing in substance for $3250 cash, a $6000 first lien note and a $1250 second lien note. This financing was accomplished by Frye's organization carrying the second lien note, which included his commission. In this way Alley paid $3250 cash, the balance of the $10,500 being represented by the two notes ($6000+$1250=$7250); Warren got his $10,500, less the commission; and Frye got his commission by its inclusion in the second lien note. Warren testified that Alley said he could finance the $7500 loan through friends, and that his efforts at financing were purely as an accommodation. Alley testified that Warren was to obtain the loan. If it were material which of these versions is correct, that of Alley must be accepted in support of the judgment. However, it is not material who was expected to undertake the negotiations for the loan. The evidence is undisputed that Warren was unable to obtain a "commitment" above $6000; and Alley could not himself obtain the loan; and it was not obtained. The contract was expressly conditioned upon making the loan; which condition was never met. Warren also denied that he ever released the earnest money $500 check. In this he was contradicted by Fasto and Russell. The conflict must be resolved in support of the judgment. Warren's brief seems to lay much stress upon the fact that there was no written release of the contract by Warren. Dowd, who conducted the negotiations for Frye, testified that he had Alley's assurance that Warren had agreed to the release; otherwise Frye would not have negotiated with Alley as there would have been an infringement upon the right of another real estate dealer, in violation of the real estate agent's exchange code, since Frye know of the previously existing contract of Warren. It is not our province to pass upon the question as to the character of proof of Warren's termination of his contractual rights with Russell which was required under the real

estate agent's code. Under the evidence Frye relied upon the assurance of Alley which was based upon facts amply supported by evidence, and which the trial court manifestly accepted.

■ The case made by the pleadings and evidence clearly falls within the rule announced and applied a half century ago in (then Associate) Justice Brown's opinion in the leading case of Pryor v. Jolly, 91 Tex. 86, 40 S.W. 959, 960, that: Where the agent sues upon an express contract made with the seller he is "entitled to recover upon showing a compliance with the very terms of his contract, and not otherwise." The contract there with the agent read: "If E. R. Holden takes 1,500 head of F. & T. cattle at the rate of $17 per head cash, I do hereby agree to pay W. H. Jolly $1 per head commission * * *."

Holden was unable to procure the cash, and Pryor sold the cattle to him on the same day the contract was made upon other terms. The court said: "If the evidence had shown that Jolly procured the purchaser, Holden, and that Holden was ready and willing to take the 1,500 head of cattle, and ready, willing, and able to pay the cash for them upon delivery (that is, if he had the money, or could procure it), and that Pryor refused to comply with the contract by delivering the cattle and receiving the money, then Jolly might have recovered under his contract, *with proper pleading.*" (Emphasis added.)

■ The analogy between that case and this is obvious. The uncontradicted evidence shows that the contract was not consummated, and for the sole reason that Alley could not procure the $7500 loan. Furthermore, the evidence supports a finding that when it developed that the loan could not be procured Warren abandoned the contract and consented to return of the earnest money. There was no pleading or showing of fraud; and none of Alley's ability to meet the express condition of the contract, or of Russell's refusal to carry it out. See Goodwin v. Gunter, 109 Tex. 56, 185 S.W. 295, 195 S.W. 848.

The trial court's judgment is affirmed.

Affirmed.