LOCKHART--HUTCHENS, Realtors, Appellant,

v.

Marvin A. BERGSTROM et ux., Appellees.

No. 11628.

Court of Civil Appeals of Texas.

Austin.

Nov. 20, 1968.

Rehearing Denied Dec. 11, 1968.

Cofer & Cofer, Hume Cofer, Austin, for appellant.

McGinnis, Lochridge, Kilgore, Byfield, Hunter & Wilson, Lloyd Lochridge, John W. Stayton, Jr., Austin, for appellees.

O'QUINN, Justice.

Hutchens, sole owner of Lockhart-Hutchens, Realtors, sued Marvin A. Bergstrom and wife for $45,000 as broker's commission upon a written contract of sale of the Penthouse Apartments in Austin, Texas.

The contract of sale between the Bergstroms as sellers and Dan Magown and Otto B. Schoenfeld as purchasers recited the commission agreement with Hutchens as follows:

"It is understood that Lockhart-Hutchens, Realtors, are the agents of SELLER and when this transaction is consummated for services rendered and to be rendered in connection with this transaction, they are to be paid by SELLER the following:

A. The sum of $5,000.00 cash, to be paid by SELLER to Lockhart-Hutchens, Realtors, upon receipt by SELLER of the consideration provided in Paragraph II–A hereof.

B. A sum equal to the amount which PURCHASER'S promissory note provided for in Paragraph II–D exceeds $100,000.00, said sum to be paid to Lockhart-Hutchens, Realtors by SELLER entrusting said note to an agent mutually agreed upon by SELLER and Lockhart-Hutchens, Realtors, for collection with instructions that as each payment thereon is made by PURCHASER, the same shall be proportionately credited to the accounts of SELLER and Lockhart-Hutchens, Realtors, in accordance with their respective percentage interests in the note."

The sale to Magown and Schoenfeld was not made. The question is whether Hutchens was entitled to the commission under the facts of the case.

The trial court upon findings of the jury entered judgment for the Bergstroms that Hutchens take nothing by his suit. Hutchens has perfected his appeal and assigns five points of error. The Bergstroms reply under three counterpoints.

Hutchens contends he was entitled to an instructed verdict because he alleged and the uncontradicted testimony showed that after accepting and executing a binding contract with Magown and Schoenfeld, who were purchasers produced by Hutchens, and while the purchasers were ready, willing, and able to perform, the Bergstroms prevented consummation of the contract by conveying to a third party.

The Bergstroms take the position that Hutchens was not entitled to recover his commission because he was able to show neither that Magown and Schoenfeld were ready, willing, and able to buy, nor that the sales contract was enforceable by Bergstrom against Magown and Schoenfeld.

The contract of sale between the Bergstroms as sellers and Magown and Schoenfeld as buyers recites that it was made and

entered into January 27, 1966, and shows it was executed the following day, January 28. The contract further provided that:

"This transaction is to be consummated on or before sixty (60) days from the date hereof and is to be consummated by SELLER delivering to PURCHASER a good and sufficient warranty deed to the real property described above, a good and sufficient bill of sale to the personal property described in the General American Life Deed of trust and in Exhibits 'B' and 'C' attached hereto, together with all leases and other agreements pertaining to the business, together with the name and good will of the business in exchange for PURCHASER delivering to SELLER the consideration provided in Paragraph II hereof."

If the sixty-day period is calculated from January 27, 1966, the sixtieth day was March 28, or if the period is measured from the date of execution, the sixtieth day was March 29. It is undisputed that on March 26, within the sixty-day period by either calculation, the Bergstroms entered into a written contract with Ruben H. Johnson to sell him the same property, and three days later, on March 29, executed a deed to Johnson which was delivered next day.

Magown and Schoenfeld did not know that the Bergstroms had contracted within the sixty-day period to sell the Penthouse Apartments to Johnson. They learned on March 31, after they had gone to the office of an attorney to close the sale, that the Bergstrom deed to Johnson had been placed of record the day before.

The jury found in answer to special issue No. 5 that the parties to the contract intended that the closing within an exact period was essential to require performance of the contract.

A further provision of the contract between the Bergstroms as sellers and Magown and Schoenfeld as buyers is significant in determining whether Magown and Schoenfeld were purchasers ready, willing,

and able to perform. That provision constitutes one of six contingencies set up in paragraph III, as follows:

"The consummation of this contract is expressly contingent upon and subject to the following conditions and it is expressly understood that unless all of such conditions are satisfied, this contract shall, at the option of PURCHASER, become null and void and of no further force and effect:

\* \* \*

D. The obtaining by PURCHASER of a loan in the sum of $150,000.00 from a lender chosen by PURCHASER and upon terms and conditions acceptable and satisfactory to PURCHASER, the repayment of which is to be secured by the lien of a deed of trust secondary and inferior to that held by General American Life and covering the same property covered thereby and by the first lien of a chattel mortgage on the personal property described in the attached Exhibit 'B.' "

It is without contest that Magown and Schoenfeld were relying upon Southern Union Gas Company for the loan ($150,000) mentioned in the contract. They tried without success to obtain a loan from other sources, and Southern Union finally gave the only commitment they were able to obtain. The loan commitment from Southern Union, in the sum of $160,000, was dated March 29, 1966, and imposed several conditions on the loan of the money. The main condition was that Magown and Schoenfeld would use air conditioning and other equipment operated by gas in Greenwood Towers, another apartment project Magown and Schoenfeld were then planning to construct in Austin.

The commitment also required as security for the loan a chattel mortgage on the personal property located in the Penthouse. In a letter dated March 30 Southern Union notified the attorney for Magown and Schoenfeld that the mortgage would be mailed the following day. Copies of the

note and deed of trust to be executed by Magown and Schoenfeld were mailed by Southern Union to the attorney who received the documents March 31. The originals were to be sent to the Austin Title Company, where the loan was to be closed, but none of these papers, including the chattel mortgage, was received by the attorney or the title company.

The loan commitment was never signed by Magown and Schoenfeld, and after the sale was not closed March 31, the commitment was returned to Southern Union.

The jury found that failure to consummate the contract "was due to the fault of Schoenfeld and Magown." The jury also found that Magown and Schoenfeld by March 28, 1966, had not waived their option under paragraph III "for the contract to become null and void."

Under special issue No. 10 the jury further found that after the contract was executed in January Magown and Schoenfeld were not ready, willing, and able to perform. The issue as submitted did not limit the jury to the sixty-day period, but in effect asked whether the purchasers were at any time after January 27 ready, able, and willing to buy the property.

▮ This case can be decided and the judgment of the trial court affirmed on the point that the prospective purchasers Hutchens brought to the Bergstroms were never ready, willing, and able to buy within the time agreed in the contract of sale for performance by the parties.

▮▮ It is settled that time is not the essence of an ordinary contract for the conveyance of land in which the purchase money is to be paid at a future day. Johnson v. Portwood, 89 Tex. 235, 34 S.W. 596, 787; Gala Homes, Inc. v. Fritz, 393 S.W.2d 409 (Tex.Civ.App., Waco, writ ref., n. r. e.) and cases cited 393 S.W.2d 409, 412. If the contract does not expressly make time of the essence, the question of whether time is of the essence is one of fact for the jury, unless the court because of the subject matter of the contract can judicially know that the parties clearly intended that time should be of the essence. Shields v. Dunlap, 174 S.W.2d 642 (Tex.Civ.App., Eastland, no writ).

Hutchens contends that it was error for the trial court to permit Bergstrom to testify that before signing the written contract Schoenfeld and Magown said they already had a loan commitment and could close the sale in a week or two, but that the purchasers ended up talking Bergstrom out of sixty days. The effect of this testimony, Hutchens urges, was to vary the written contract.

▮ We hold that it was proper to admit testimony bearing on intention of the parties under circumstances surrounding the proposed sale. Herber v. Sanders, 336 S.W.2d 783 (Tex.Civ.App., Amarillo, no writ); Shields v. Dunlap, supra; 55 Am. Jur., Vendor and Purchaser, sec. 113; 13 Tex.Jur.2d, Contracts, Sec. 289.

Hutchens testified that time was of the essence in the proposed transaction. His testimony was given in the following question and answer during cross examination:

"Q Well you were concerned, then, that the time period would go by and the parties wouldn't have done what they agreed to do in the time that was allowed?

A Time is of the essence, and we had a time factor."

Later, in response to questioning by his counsel, Hutchens testified that he knew "there was a definite time stated that it was supposed to be closed within a certain period of time."

The jury found in response to special issue No. 1 that Marvin Bergstrom prevented consummation of the contract. In determining whether Hutchens was entitled to collect his commission, we regard this finding as immaterial because Magown and Schoenfeld were never ready or able to perform for want of a loan commitment.

Hutchens produced purchasers for Bergstrom, but Bergstrom was never able to enforce the contract of sale against Magown and Schoenfeld because they failed to meet the condition that they obtain a loan commitment. Warren v. Russell, 206 S.W. 2d 132 (Tex.Civ.App., Austin, no writ); 12 Am.Jur.2d, Brokers, sec. 188, p. 930.

We hold that there was sufficient evidence to support the findings of the jury that time was of the essence and that Magown and Schoenfeld were never ready, willing and able to perform the contract.

The five points of error presented by Hutchens have been considered in reaching our conclusions already stated, and the points are overruled.

The judgment of the trial court is in all things affirmed.