**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 28, 2011

Lyle W. Cayce
Clerk

No.  10-50410

In the Matter of: ESCARENT ENTITIES, L.P.,

Debtor

_____

QUANTUM DIVERSIFIED HOLDINGS, INC.,

Appellant

v.

EDMUND WIENHEIMER; JOHN SCHMERMUND,

Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:09-CV-383

Before JONES, Chief Judge, and DENNIS and CLEMENT, Circuit Judges.

EDITH H. JONES, Chief Judge:[*]

This appeal arises from a bankruptcy proceeding in which the bankruptcy court approved, pursuant to 11 U.S.C. § 365, the debtor-seller's assumption of a contract for the sale of land.  The purchaser under the contract opposed the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No.  10-50410

assumption and thus sought review of the bankruptcy court's decision in the district court.  The district court affirmed the order, which the purchaser now appeals.  Finding the bankruptcy court erred in approving the assumption of the contract, we REVERSE.

## I.  Background

Escarent Entities, L.P. ("Escarent")[1] and Quantum Diversified Holdings, Inc. ("Quantum") executed a contract for the sale of land on September 17, 2008. Pursuant to the contract, Quantum would purchase from Escarent 495.23 acres of undeveloped land in Hays County, Texas.  The contract specified an initial 90-day feasibility period, during which Quantum had an unrestricted right to terminate the contract, provided it notified Escarent by December 17, 2008. Quantum did not exercise this termination right, and was thus bound to close on the land deal by January 12, 2009, the closing date specified in the contract. A week before the parties were to close, however, Escarent filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  As a result, the closing date passed without event.

Nearly one month later, Escarent filed in the bankruptcy court a motion for an order approving the conditional assumption of the contract, which the bankruptcy court granted on March 6, 2009.  Under this conditional assumption, Escarent could auction the property to a third party to maximize its value; if no sale were consummated, it would then assume the contract with Quantum. Having opposed this motion, Quantum subsequently filed in the bankruptcy

---

[1] While this appeal was pending, the bankruptcy court converted Escarent's chapter 11 case into a chapter 7 liquidation.  Following this conversion, Escarent's interests in this appeal and any causes of action against Quantum were sold to Edmund A. Wienheimer, Jr., and John J. Schmermund, two principals of Escarent (the "Purchasers").  As a result, Escarent no longer has an interest in this appeal.  Nevertheless, the case is not moot because Quantum potentially faces an action for damages by the Purchasers based on Quantum's failure to close on the sale of the property.  Since a decision in Quantum's favor would impact Quantum's liability in such an action, the case remains justiciable.  *Cf. In Re Sullivan Cent. Plaza, I, Ltd.*, 914 F.2d 731, 735 (5th Cir. 1990).

No. 10-50410

court a motion for reconsideration and a motion to alter or amend the court's March 6 order. The court, after a hearing, partially granted Quantum's request to modify its decision. The court thus issued a new assumption order on March 25, 2009.

Under the modified order, Escarent's assumption of the contract was still approved, but this time the bankruptcy court provided Quantum 90 days to secure financing. The order also specified that closing would occur no later than one week after the initial 90-day period expired, unless Quantum elected to extend the closing date. The court authorized Quantum to extend the closing date for two 30-day periods, provided it paid Escarent $20,000 for each extension. If Quantum used both extensions, Quantum would then be required to close by the first Monday of September 2009. Importantly, the bankruptcy court rejected Quantum's request that the initial 90-day period include a right to terminate the contract, as Quantum had been permitted to do under the feasibility period of the original agreement.

Quantum timely appealed to the district court, which affirmed the bankruptcy court's modified order. Quantum now appeals to this court.

## II. Standard of Review

This court reviews the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court. *In re Scopac*, 624 F.3d 274, 279-80 (5th Cir. 2010). Accordingly, the bankruptcy court's findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo*. *Id.* at 280.

3

No.  10-50410

## III.  Discussion

Quantum raises two challenges to the bankruptcy court's order approving Escarent's assumption of the land contract.[2]  First, Quantum contends that Escarent's failure to close on January 12, 2009, constituted an incurable default, such that Escarent was precluded from assuming the contract under § 365.[3] Second, Quantum argues that the bankruptcy court impermissibly rewrote the terms of the contract in its assumption order, which violates the well-settled rule that a debtor must assume the entire contract, with all of its benefits and burdens.  We address each issue in turn.

### A.

Escarent's assumption of the contract is governed by Section 365 of the Bankruptcy Code.  Section 365 provides that a chapter 11 debtor-in-possession may, with some exceptions, assume an executory contract of the debtor with court approval.  11 U.S.C. § 365(a); *see* 11 U.S.C. § 1107(a).  By pursuing assumption under this section, a debtor may effectively "force another party to an executory contract to continue to perform under the contract." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir. 1985).  If the debtor has defaulted under the contract, however, the debtor may not assume the contract unless the debtor, *inter alia*, cures the default or provides adequate assurance that it will do so. 11 U.S.C. § 365(b); *Richmond Leasing Co.*, 762 F.2d at 1310.  One purpose served by this requirement is "to insure that the

---

[2] Quantum also raises what amounts to a bad faith claim against Escarent, which we do not reach given Quantum's failure to raise it before the bankruptcy court.  *See VRC LLC v. City of Dallas*, 460 F.3d 607, 612 (5th Cir. 2006) (finding argument waived where raised first time on appeal).

[3] Quantum also argues that the assumption was improper since the contract was no longer executory at the time Escarent assumed it.  *See In re Texscan Corp.*, 107 B.R. 227, 230 (B.A.P. 9th Cir. 1989) ("It is axiomatic that before 11 U.S.C § 365 can apply a contract must exist.").  We need not, however, reach this issue, since reversal is appropriate based on the other grounds raised by Quantum.  *See infra.*

No. 10-50410

contracting parties receive the full benefit of their bargain if they are forced to continue performance." *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (quoting *In re Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996)). It follows that if a default is incurable, assumption is necessarily precluded by the plain meaning of § 365. In this case, Escarent's non-monetary default[4] is incurable. Closing the sale by the specified date constituted a material term of the contract, the breach of which could not be cured given the nature of financing arrangements and the operation of interrelated provisions of the parties' contract.

Under Texas law,[5] failure to perform in a timely manner constitutes a material breach where time is of the essence in the contract. *See TrueStar Petroleum Corp. v. Eagle Oil & Gas Co.*, 323 S.W.3d 316, 319-20 (Tex. App. 2010). Texas courts have clarified that timely performance is a material term "if the contract expressly makes time of the essence or if something in the nature and purpose of the contract and the surrounding circumstances make it apparent that parties intended that time be of the essence." *Id.* (citing *Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App. 2008)). In *Deep Nines, Inc.*, the court held that timely performance was a material term of the contract where the agreement stated specific dates and times for performance, provided a cure period if payment was not received when due, and stated that if payment was not received within the cure period, the payor would be in default. *Deep Nines, Inc.*, 246 S.W.3d at 846.

---

[4] Because Escarent was the seller of the property, it was required to deliver to Quantum possession of and title to the property. Failure to do so constitutes a non-monetary default.

[5] To determine whether a default is material, we look to the state law governing the contract. *Cf. In re Shangra-La, Inc.*, 167 F.3d 843, 848 (4th Cir. 1999). Here, Texas law governs the contract, since both the land and the parties are located in Texas.

No. 10-50410

Here, the contract specified a closing date–30 days after the feasibility period terminated–and provided remedies for the non-defaulting party in the event of the other party's failure to close. If Quantum defaulted, Escarent could elect either to seek specific performance or to terminate the contract and receive liquidated damages. If Escarent defaulted, Quantum had the option either to extend the time for performance or terminate the contract. To construe the contract so that timely performance is not a material term would render these provisions meaningless. *See id.* Under Texas law, time was of the essence in the contract. Accordingly, Escarent's failure to close by the original closing date–January 12, 2009–was a material default.

In addition, this default was not curable given the nature of the closing date and its relationship to other provisions of the contract. As noted above, the contract specified a closing date defined as 30 days beyond the expiration of the 90-day feasability period. Construing the contract as a whole, it becomes clear that the closing date and the feasibility period worked in tandem. During the 90-day feasability period, Quantum had a right to terminate the contract for any reason. This allowed Quantum to, for example, inspect the property and secure financing before legally obligating itself to purchase the land. As it turned out, Quantum initially declined to terminate the contract during the feasibility period, thus binding itself to perform under the contract. Quantum testified that it had secured funding for the property that would have enabled it to complete the transaction by January 12. Because funding arrangements are often time-limited, Quantum's ability to close changed after the closing date passed. Economic conditions deteriorated and, as a result, Quantum was no longer able to secure alternative financing after Escarent's default. Escarent's failure to close was thus not only a material default, but effectively an incurable one, as the parties are unable to return to January 12, 2009, when Escarent's

6

No. 10-50410

performance was originally due. The bankruptcy court thus erred in approving Escarent's assumption of an incurably defaulted contract.

**B.**

Even if the contract was subject to assumption, however, the court also erred in approving Escarent's assumption of the contract without including a feasibility period. It is well-settled that an executory contract cannot be assumed in part and rejected in part. *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996). Rather, a debtor "must assume the entire contract, *cum onere*"–the debtor must accept "both the obligations and the benefits of the executory contract." *In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000). Escarent argues that since the original feasibility period had expired by the time it filed bankruptcy, Quantum already received the benefit of this term of the contract and thus the bankruptcy court did not err in refusing to include a new one in the assumption order. We find this argument unpersuasive, given the interrelation of the feasibility period and the specified closing date. As noted above, a principal benefit of the feasibility period was that it allowed Quantum to secure financing before committing itself to purchase Escarent's land. When the original closing date lapsed as a result of Escarent's failure to close, so did the benefit that Quantum derived from the feasibility period. Consequently, by imposing a new closing date without affording Quantum the protection of a feasibility period, the bankruptcy court denied Quantum a considerable protection under the contract and allowed Escarent to escape the corresponding burden. The court, moreover, effectively rewrote the parties' contract by adding subsequent thirty-day extensions of the closing period if purchased by Quantum. This un-agreed-to modification betokened more than a mere assumption of the parties' contract. The bankruptcy court thus violated its obligation to ensure that Escarent assumed the contract *in toto*.

7

No.  10-50410

## IV.  Conclusion

For these reasons, we REVERSE the judgments of the district and bankruptcy courts.