ACCEPTED
03-15-00261-CV
7120403
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/28/2015 11:06:03 AM
JEFFREY D. KYLE
CLERK

No. 03-15-00261-CV

IN THE THIRD DISTRICT COURT OF APPEALS
AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/28/2015 11:06:03 AM
JEFFREY D. KYLE
Clerk

THOMAS D. YOUNG A/K/A T. DAVID YOUNG,

*Appellant*,

v.

JPMORGAN CHASE BANK, N.A.

*Appellee.*

Appealed from the 126th District Court,
Travis County, Texas
The Honorable Darlene Byrne, Presiding

## BRIEF FOR APPELLEE

Marcie L. Schout (Lead Counsel)
Texas State Bar No. 24027960
Wm. Lance Lewis
Texas State Bar No. 12314560
**QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
mschout@qslwm.com
llewis@qslwm.com

**ATTORNEYS FOR APPELLEE
JPMORGAN CHASE BANK, N.A.**

# IDENTITY OF PARTIES AND COUNSEL

**Appellant:**

Thomas D. Young
a/k/a T. David Young

**Appellee:**

JPMorgan Chase Bank, N.A.

**Appellants' Counsel:**

Stephen Casey
Casey Law Office, P.C.
595 Round Rock West Drive
Suite 102
Round Rock, Texas 78681

**Appellee's Counsel:**

Marcie L. Schout
Wm. Lance Lewis
Quilling, Selander, Lownds,
    Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas  75201

# TABLE OF CONTENTS

**Page**

Identity of Parties and Counsel ..................................................................i

Table of Contents ................................................................................. ii

Index of Authorities ................................................................................iv

Statement of the Case...............................................................................vi

Statement Regarding Oral Argument ..................................................... vii

Issues Presented for Review ................................................................ viii

Statement of Facts....................................................................................1

Summary of the Argument........................................................................4

Standard of Review...................................................................................6

Argument and Authorities.........................................................................7

I.      The judgment for judicial foreclosure can be affirmed on grounds that do not raise the "time is of the essence" arguments addressed by Young...............................................................................................7

    A.      By failing to address the alternate ground for the summary judgment, Young waived any error, and the summary judgment should be affirmed................................................8

    B.      JPMC established its entitlement to judicial foreclosure under the terms of the Security Instrument. .........................................9

II.     The entirety of the Settlement Agreement and the actions of the parties establish that time was of the essence, such that Young breached the Settlement Agreement. ...........................................10

    A.      To give each provision in the Settlement Agreement meaning, the August 1, 2014 deadline must be interpreted as a material term. ..........................................12

B. The parties' actions further demonstrate that the parties intended the August 1, 2014 deadline to be material. ..........................18

C. It is appropriate for a trial court to determine whether time is of the essence as a matter of law under circumstances like those presented here. ...........................................19

III. The trial court did not abuse its discretion by rejecting Young's unclean hands arguments where JPMC fully performed and was simply seeking to enforce the express provisions of the Settlement Agreement...............................................................................................20

Prayer ...............................................................................................................23

# INDEX OF AUTHORITIES

**Page**

**C**ASES

*Argos Res., Inc. v. May Petroleum Inc.*,
   693 S.W.2d 663 (Tex. App.—Dallas 1985, writ ref'd n.r.e.)........................17

*Builders Sand, Inc. v. Turtur*,
   678 S.W.2d 115 (Tex. App.—Houston [14th Dist.] 1984, no
   writ)...........................................................................................................19

*Cincinnati Life Ins. Co. v. Cates*,
   927 S.W.2d 623 (Tex. 1996) ....................................................................6, 7

*Cire v. Cummings*,
   134 S.W.3d 835 (Tex. 2004) .........................................................................7

*Deep Nines, Inc. v. McAfee, Inc.*,
   246 S.W.3d 842 (Tex. App.—Dallas 2008, no pet.) ................... 11, 14, 15, 20

*Dunnagan v. Watson*,
   204 S.W.3d 30 (Tex. App.—Fort Worth 2006, pet. denied).....................7, 21

*FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*,
   426 S.W.3d 59 (Tex. 2014) ..........................................................................14

*Hall v. Lone Star Gas Co.*,
   954 S.W.2d 174 (Tex. App.—Austin 1997, pet. denied)..............................20

*Handwerker Hren Legal Search, Inc. v. Recruiting Partners GP, Inc.*,
   03-13-00239-CV, 2015 WL 4999054 (Tex. App.—Austin Aug.
   19, 2015, no. pet. h.) .....................................................................................7

*In re Escarent Entities*, L.P.,
   423 F. Appx. 462 (5th Cir. 2011) ........................................................ 14, 15

*Lazy M Ranch, Ltd. v. TXI Operations, LP*,
   978 S.W.2d 678 (Tex. App.—Austin 1998, pet. denied).............................20

*Lockhart-Hutchens v. Bergstrom*,
434 S.W.2d 453 (Tex. Civ. App.—Austin 1968, writ ref'd
n.r.e.) ...............................................................................................20

*Mustang Amusements, Inc. v. Sinclair*,
10-07-00362-CV, 2009 WL 3487796 (Tex. App.—Waco Oct.
28, 2009, no pet.) .................................................................................7

*Neely v. Wilson*,
418 S.W.3d 52 (Tex. 2013) .................................................................6

*Paciwest, Inc. v. Warner Alan Properties, LLC*,
266 S.W.3d 559 (Tex. App.—Fort Worth 2008, pet. denied).........................7

*Rinard v. Bank of Am.*,
349 S.W.3d 148 (Tex. App.—El Paso 2011, no pet.) ...............................9, 10

*Secure Comm, Inc. v. Anderson*,
31 S.W.3d 428 (Tex. App.—Austin 2000, no pet.)....................................8, 9

*Seismic & Digital Concepts, Inc. v. Digital Res. Corp.*,
590 S.W.2d 718 (Tex. Civ. App.—Houston [1st Dist.] 1979, no
writ)....................................................................................................17

*Shaw v. Kennedy, Ltd.*,
879 S.W.2d 240 (Tex. App.—Amarillo 1994, no writ) ...............................18

*Siderius, Inc. v. Wallace Co.*,
583 S.W.2d 852 (Tex. Civ. App.—Tyler 1979, no writ.) ............................19

*State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No
Cents in U.S. Currency ($90,235)*,
390 S.W.3d 289 (Tex. 2013) ...............................................................6

*Sw. Bell Tel., L.P. v. Emmett*,
459 S.W.3d 578 (Tex. 2015) ...............................................................6

## STATEMENT OF THE CASE

JPMorgan Chase Bank, N.A. ("JPMC") filed this suit against Thomas D. Young a/k/a T. David Young ("Young") in February 2012 seeking to foreclose on the lien securing a home equity loan. CR 4. In April 2014, the parties entered into a settlement agreement, which provided for the entry of an agreed judgment of foreclosure if a short payoff was not received by August 1, 2014. CR 32-37. After Young did not make the short payoff payment and refused to sign the agreed judgment of foreclosure, JPMC filed an amended petition asserting a claim for breach of contract and seeking to enforce the terms of the settlement agreement. CR 52-57. JPMC filed a motion for summary judgment based on Young's breach of the settlement agreement and breach of the applicable note and security instrument. CR 168. The trial court granted the motion for summary judgment and entered judgment permitting JPMC to proceed with foreclosure. CR 350.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not warranted in this case. Appellee does not believe that oral argument will significantly impact the decisional process of the Court. If however, the Court believes oral argument would be helpful and oral argument is held, Appellee desires to participate therein.

# ISSUES PRESENTED FOR REVIEW

1. Should the summary judgment granting judicial foreclosure be affirmed on the independent ground of breach of the Security Instrument where (1) this ground was raised in the summary judgment motion and the summary judgment order, (2) Young failed to address this independent ground and accordingly waived any issues relating to it, and (3) the summary judgment evidence conclusively established breach of the Security Instrument such that JPMC was entitled to summary judgment of judicial foreclosure?

2. Was Young's failure to comply with the deadline for tendering the short payoff a material breach entitling JPMC to specific performance where the entirety of the Settlement Agreement and the actions of the parties established that time was of the essence with regard to the tendering of the short payoff?

3. Did the trial court abuse its discretion in granting JPMC specific performance where JPMC fully performed under the terms of the Settlement Agreement and Young's failure to satisfy the short payoff deadline was not due to any unlawful or inequitable conduct by JPMC?

## STATEMENT OF FACTS

On or about December 19, 2000, Young obtained a loan (the "Loan") evidenced by a Texas Home Equity Note (the "Note") in the original principal amount of $337,500, secured by a Texas Home Equity Security Instrument ("Security Instrument"), encumbering property commonly known as 10336 West Darleen Drive, Leander, Texas 78641 (the "Property"). CR 187-199. JPMC is the mortgage servicer for the the Loan on behalf of Deutsche Bank National Trust Company f/k/a Bankers Trust Company of California, N.A., as Trustee for Long Beach Mortgage Loan Trust 2001-1. CR 246.

Young defaulted on the loan by failing to make the payment due May 1, 2004 and the payments due thereafter. CR 185. JPMC attempted to foreclose in 2005, but its efforts were blocked when Young filed a meritless lawsuit. CR 324, 328-331, 304-307.

On February 29, 2012, JPMC filed this suit against Young seeking judicial foreclosure of the Security Instrument. CR 4. In April 2014, JPMC and Young signed a Confidential Settlement Agreement and Release of Claims ("Settlement Agreement") to avoid the risk, uncertainty, and cost of litigation. CR 220. The case was abated to allow for the parties to perform under the Settlement Agreement. CR 27.

1

Under paragraph 1.1 of the Settlement Agreement, Young had the opportunity to pay off the Loan at a reduced sum:

> Young agrees to sell or obtain a 3rd party take-out refinance of the indebtedness secured by the Deutsche Bank Lien on or before August 1, 2014, and Deutsche Bank agrees to accept a short payoff of the Loan in the amount of $220,000 on or before August 1, 2014 ("Settlement Funds"). Specifically, Young has designated the title company Netco, Inc., 7719 Wood Hollow Drive Ste. 157, Austin, TX 78731 ("Title Company") and escrow officer Dewayne Naumann ("Escrow Agent") to close the sale or refinance of the Property. Upon closing of the Property sale or refinance, Young agrees that the Escrow Agent shall promptly distribute $220,000 of the sale or 3rd party take-out refinance proceeds ("Settlement Funds") to Deutsche Bank c/o Wm. Lance Lewis, QSLWM, P.C., 2001 Bryan Street, Suite 1800, Dallas, Texas 75201.

CR 221. If Young did not tender the Settlement Funds by August 1, 2014, he agreed to return an agreed judgment for foreclosure:

> If Young fails to tender the Settlement Funds in accordance with Paragraph 1.1, Young agrees that Deutsche Bank shall have judgment for foreclosure. Young, through and under his attorney, will sign and return a copy of a judgment for foreclosure under the Texas Home Equity Security Instrument in the form attached as Exhibit C no later than August 8, 2014.

CR 221.

In accordance with the terms of the Settlement Agreement, on May 23, 2014, JPMC delivered to the Title Company and Escrow Officer a Payoff Letter good through August 1, 2014 and Closing Instructions. CR 243, 245.

2

Young then failed to perform under the Settlement Agreement. On July 29, 2014, Young determined he could not timely tender the Settlement Funds to JPMC and requested a 31-day extension of the deadline for him to obtain the Settlement Funds, and asked for a new payoff letter good through August 31, 2014. CR 251. On August 5, 2014, JPMC advised it would not modify the terms of the Settlement Agreement by extending the deadline by which it would accept the Settlement Funds. CR 252. The Settlement Agreement required Young to return the executed Agreed Judgment for foreclosure by August 8, 2014. CR 221. On August 7, 2014, Young made "clear" that he "will not sign" the Agreed Judgment, and advised that JPMC would have to seek relief from the court. CR 260. Because Young failed to sign the Agreed Judgment, JPMC filed a Second Amended Petition adding a claim for breach of the Settlement Agreement and seeking specific performance of same through the entry of an order for judicial foreclosure. CR 52-56.

On September 30, 2014, JPMC sent a notice of default to Young advising that the total amount of $533,619.16 was past due. CR 270-272. Young failed to cure the default, and on October 31, 2014, JPMC sent a notice of acceleration. CR 274-275. The Loan remained in default at the time JPMC's motion for summary judgment was filed and considered. CR 240-241.

# SUMMARY OF THE ARGUMENT

After years of attempting to complete a foreclosure, JPMC entered into a Settlement Agreement with Young. Under the terms of that agreement, Young was given an opportunity to pay off the Loan for a significantly reduced amount, if such payment was made by August 1, 2014. If Young did not take advantage of this opportunity, he agreed that this foreclosure odyssey would come to an end, and JPMC would be entitled to an agreed judgment for foreclosure. It is undisputed that Young did not comply with the August 1, 2014 deadline for the short payoff and he refused to execute the agreed judgment for foreclosure under the Settlement Agreement. Given that, JPMC was entitled to a judgment for specific performance of the Settlement Agreement.

Young attempts to avoid this conclusion, and further prolong this matter, by arguing that he was not required to comply with the August 1 deadline because time was not of the essence. This argument is belied by the terms of the Settlement Agreement which made it clear that penalties, in the form of an agreed foreclosure and the voiding of a release provided by JPMC, would be imposed if the short payoff was not received by August 1. In order for these provisions to be given meaning, the August 1 deadline must be enforced as a material term.

Young also relies on an unclean hands argument to avoid specific performance. However, nothing about JPMC's conduct warrants such a finding.

4

The doctrine of unclean hands precludes equitable relief to a party who utilizes unlawful or inequitable means in connection with the transaction at issue. Here, the facts established that JPMC provided the required payoff quote in May 2014, months before the payoff was due, and there is no indication that JPMC interfered with Young's ability to obtain financing to fund the short payoff by August 1, 2014. Young points to no controverting evidence and instead argues that JPMC should have been required to modify the deadline for the short payoff. Nothing about JPMC's insistence on the benefit it had bargained for amounts to unlawful or inequitable conduct. As a result, the trial court did not abuse its discretion in granting specific performance.

It is not necessary for the Court to even reach the issues pertaining to specific performance because the trial court's order of judicial foreclosure was also premised on JPMC's claim for breach of the Security Instrument. Young failed to address this independent ground in his opening brief and as a result waived this issue. In addition, the undisputed facts demonstrate that JPMC established the facts necessary to support an order of judicial foreclosure based on Young's default and breach of the Security Instrument. The summary judgment can be affirmed on this independent ground.

## STANDARD OF REVIEW

The granting of a motion for summary judgment is reviewed de novo. *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015). The Court reviews the summary judgment record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Neely v. Wilson*, 418 S.W.3d 52, 59-60 (Tex. 2013). "A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and it is entitled to judgment as a matter of law." *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 292 (Tex. 2013). On appeal, courts "should consider all summary judgment grounds which the trial court expressly rules on and the movant preserves for appellate review that are necessary for final disposition of the appeal." *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). In addition, "the appellate court may, in the interest of judicial economy, consider other grounds that the movant preserved for review and that the trial court did not rule on." *Id*. at 624.

The issue of whether to grant specific performance is left to the discretion of the trial court, and the trial court's ruling on whether unclean hands would bar specific performance will only be overturned if there is an abuse of discretion. *Paciwest, Inc. v. Warner Alan Properties, LLC*, 266 S.W.3d 559, 572 (Tex. App.—

Fort Worth 2008, pet. denied); *Dunnagan v. Watson*, 204 S.W.3d 30, 41 (Tex. App.—Fort Worth 2006, pet. denied); *Mustang Amusements, Inc. v. Sinclair*, 10-07-00362-CV, 2009 WL 3487796, at *2 (Tex. App.—Waco Oct. 28, 2009, no pet.). "The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles. The trial court's ruling should be reversed only if it was arbitrary or unreasonable." *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004).

## ARGUMENT AND AUTHORITIES

**I. The judgment for judicial foreclosure can be affirmed on grounds that do not raise the "time is of the essence" arguments addressed by Young.**

The Texas Supreme Court is clear that where a trial court grants summary judgment based on one of multiple grounds raised by the movant, on appeal, the court can affirm the judgment based on any ground raised by the movant in the motion for summary judgment. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 624 (Tex. 1996); *Handwerker Hren Legal Search, Inc. v. Recruiting Partners GP, Inc.*, 03-13-00239-CV, 2015 WL 4999054, at *2 (Tex. App.—Austin Aug. 19, 2015, no. pet. h.).

Here, JPMC sought summary judgment of judicial foreclosure based on two grounds. One ground related to the breach of the Settlement Agreement and specific performance of the provisions related to the Agreed Judgment for Judicial

7

Foreclosure. CR 174-176. The second ground related to breach of the Note and Security Instrument and judicial foreclosure as the remedy for such breach. CR 178-179. The judgment entered by the trial court does not specify the grounds on which it was granted. CR 350-352. The trial court granted specific performance by requiring Young to sign the Agreed Judgment for Judicial Foreclosure attached to the Settlement Agreement. CR 350. In addition, the trial court granted JPMC judgment *in rem* for judicial foreclosure as specified in the Security Instrument. CR 350-351. As a result, the summary judgment in favor of JPMC can be affirmed based upon the establishment of a claim for breach of the Note and Security Instrument, without reaching the "time is of the essence" and unclean hands issues asserted by Young with regard to the claim for specific performance of the Settlement Agreement.

**A.     By failing to address the alternate ground for the summary judgment, Young waived any error, and the summary judgment should be affirmed.**

"Where a judgment may rest upon more than one ground, the party aggrieved by the judgment must assign error to each ground or the judgment will be affirmed on the ground to which no complaint is made. In such situations it is said that the appellant has waived his right to complain of the ruling to which no error was assigned." *Secure Comm, Inc. v. Anderson*, 31 S.W.3d 428, 430-31 (Tex. App.—Austin 2000, no pet.). For example, in *Secure Comm*, the plaintiff

8

asserted four causes of action against her former employer. *Id.* at 430. After a bench trial, the court issued a judgment in favor of the plaintiff, but did not specify on which of the plaintiff's theories she prevailed. *Id.* On appeal, the former employer only presented arguments about two of the four theories asserted by the plaintiff. *Id.* at 430-31. By failing to present arguments as to these alternate grounds, the former employer waived any possible error based on those grounds, and the trial court's judgment was affirmed. *Id.* at 431.

Similarly here, the summary judgment was based on the alternate cause of action of breach of the Note and Security Instrument. CR 178-179, 350-52. By failing to brief any issues relating to this alternate ground, Young waived any issues regarding this alternate ground, and the summary judgment should be affirmed. Moreover, as discussed below, the summary judgment evidence established JPMC's right to a foreclosure order.

### B. JPMC established its entitlement to judicial foreclosure under the terms of the Security Instrument.

The Security Instrument provides that upon Young's default, JPMC may obtain a court order and foreclose under the Security Instrument. CR 197. A lender is entitled to judgment for judicial foreclosure if it proves the existence of a debt; some part of the debt is due and unpaid; and "the property subject to the lien is the same property on which it seeks to enforce the lien." *Rinard v. Bank of Am.*, 349 S.W.3d 148, 152 (Tex. App.—El Paso 2011, no pet.) (citing *Kyle v.*

9

*Countrywide Home Loans, Inc.,* 232 S.W.3d 355, 362 (Tex. App.—Dallas 2007, pet. denied). Additionally, a lender establishes its right to foreclosure where it produces a copy of the note, a copy of the security instrument, provides notice of intent to accelerate and an opportunity to cure, and establishes that the borrower failed to cure the default. *Id.*

Here, the undisputed evidence demonstrated JPMC was entitled to judicial foreclosure of the Security Instrument. JPMC produced a copy of the Note and Security Instrument, provided written notice of default and intent to accelerate and an opportunity to cure, and established Young remains in default. CR 187-199, 240-241, 270-278. Because the Security Instrument provides for foreclosure upon Young's default, and JPMC provided all required notices, JPMC was entitled to summary judgment for judicial foreclosure, and the trial court properly entered judgment providing for an order of sale pursuant to Texas Rule of Civil Procedure 309. The summary judgment in JPMC's favor can be affirmed on this independent ground.

**II. The entirety of the Settlement Agreement and the actions of the parties establish that time was of the essence, such that Young breached the Settlement Agreement.**

Under the Settlement Agreement, "Deutsche Bank agree[d] to accept a short payoff of the Loan in the amount of $220,000 on or before August 1, 2014." CR 221. The undisputed summary judgment evidence proves Young failed to

10

tender the short payoff on or before August 1, 2014. CR 243. In addition, Young agreed that if the Settlement Funds were not tendered in accordance with the Settlement Agreement "Deutsche Bank shall have judgment for foreclosure" and Young would "sign and return a copy of a judgment for foreclosure under the Texas Home Equity Security Instrument in the form attached . . . no later than August 8, 2014." CR 221. Young failed to sign and return a copy of the agreed judgment for foreclosure. CR 243-44. Young does not dispute these facts. Instead, Young seeks to excuse his lack of compliance by arguing that time was not of the essence in connection with the performance of the Settlement Agreement. Though the Settlement Agreement does not contain the magic words "time is of the essence," the entirety of the Settlement Agreement and the actions of the parties demonstrate that time was of the essence.

"For timely performance to be a material term of the contract, the contract must expressly make time of the essence or there must be something in the nature or purpose of the contract and the circumstances surrounding it making it apparent that the parties intended that time be of the essence." *Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.). Even where the contract does not use the phrase "time is of the essence", a deadline can still be a material term as a matter of law because the courts "do not construe contracts or decide cases based on the inclusion or omission of 'magic words.'" *Id.*

11

**A.    To give each provision in the Settlement Agreement meaning, the August 1, 2014 deadline must be interpreted as a material term.**

Here, while the Settlement Agreement does not utilize the magic words "time is of the essence," the terms of the Settlement Agreement demonstrate that the parties intended the August 1, 2014 deadline to be material. Under the terms of the Settlement Agreement, though the principal balance owed was greater than $332,000 (not to mention the accrued interest and other fees owed on the Loan),[1] Deutsche Bank agreed to accept a short payoff amount of $220,000. CR 200, 221. However, the Settlement Agreement expressly provided that Deutsche Bank was agreeing to accept the short payoff, only if it was received on or before August 1, 2014. CR 221. The Settlement Agreement provided:

> 1.1    Young agrees to sell or obtain a 3[rd] party take-out refinance of the indebtedness secured by the Deutsche Bank Lien on or before August 1, 2014, and Deutsche Bank agrees to accept a short payoff of the Loan in the amount of $220,000 on or before August 1, 2014 ("Settlement Funds"). Specifically, Young has designated the title company Netco, Inc., 7719 Wood Hollow Drive Ste. 157, Austin, TX 78731 ("Title Company") and escrow officer Dewayne Naumann ("Escrow Agent") to close the sale or refinance of the Property. Upon closing of the Property sale or refinance, Young agrees that the Escrow Agent shall promptly distribute $220,000 of the sale or 3[rd] party take-out refinance proceeds ("Settlement Funds") to Deutsche Bank c/o/ Wm. Lance Lewis, QSLWM, P.C., 2001 Bryan Street, Suite 1800, Dallas, Texas 75201.

---

[1]    As of November 29, 2014, the full accelerated payoff balance was $873,914.54. CR 240-241. The payoff in April 2014 would have been slightly less than this amount due to the continued accrual of interest and other charges from April 2014 through November 2014.

CR 221.  The payoff letter attached to the Settlement Agreement as Exhibit A

provided:

> Deutsche Bank will release its lien on the Property conditioned upon:
> (a) review and approval by JPMC and Deutsche Bank of the
> settlement statement and (b) upon <u>timely receipt</u> of $220,000 in
> certified funds.

CR 228 (emphasis added).  The payoff letter sent to the closing agent on May 23,

2014 echoed this language and provided that JPMC and Deutsche Bank would

accept the short payoff "provided the funds are tendered by August 1, 2014" and

would release the Security Instrument "upon <u>timely receipt</u> of the funds."  CR 246

(emphasis added).  The letter further stated that "the Short Payoff Quote expires on

August 1, 2014."  CR 246.

The Settlement Agreement also contained consequences if the short payoff

was not received by August 1, 2014.

> 1.2.2  If Young fails to tender the Settlement Funds in accordance
> with Paragraph 1.1, Young agrees that Deutsche Bank shall
> have judgment for foreclosure.  Young, through and under his
> attorney, will sign and return a copy of a judgment for
> foreclosure under the Texas Home Equity Security Instrument
> in the form attached as <u>Exhibit C</u> no later than August 8, 2014
> to JPMC c/o Wm. Lance Lewis, QSLWM, P.C., 2001 Bryan
> Street, Suite 1800, Dallas, Texas 75201.

> 1.5  Provided Deutsche Bank receives the Settlement Funds on or
> before August 1, 2014, for and in consideration of the
> aforementioned promises, Young's release of Deutsche Bank
> and JPMC, and other good and valuable consideration, JPMC
> and Deutsche Bank forever and completely release, acquit, and
> discharge Young from any claims asserted in the Lawsuit.  If,

however, Deutsche Bank does not receive the Settlement Funds on or before August 1, 2014, JPMC and Deutsche Bank will not release their claims asserted in the Lawsuit, and they shall have judgment for judicial foreclosure.

CR 221-222.

It is an axiomatic rule of contract interpretation in Texas that contracts should be interpreted in such a way that gives application to all terms of the agreement and does not render any term of the agreement meaningless. *FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 63 (Tex. 2014). This general rule applies equally in the consideration of whether time is of the essence. Notably, if construing a contract so that timely performance is not a material term would render provisions of the contract meaningless, time is of the essence under Texas law. *Deep Nines, Inc.*, 246 S.W.3d at 846; *In re Escarent Entities*, L.P., 423 F. Appx. 462, 466 (5th Cir. 2011).

For example, in *Deep Nines, Inc.*, the agreement required that monthly payments owed under a settlement agreement would be received by McAfee on or before 5:00 p.m. on the sixth day of the month. 246 S.W.3d at 844. If the payment was not received by that time, McAfee would provide a notice of default. *Id.* The agreement provided that "[i]f Deep Nines then fails to deliver the past due payment within three (3) business days after the notice of past due payment, then Deep Nines shall be considered to be in default." *Id.* Deep Nines argued that "because the settlement agreement [did] not contain an express provision stating that 'time is

14

of the essence,' the issue of whether timely performance is a material term of the agreement is a fact question for the jury." *Id.* at 846. The Court disagreed, reasoning that while a stated date for performance does not by itself make time of the essence, the agreement did more than set forth a date of performance; it also set forth a cure provision and provided Deep Nines would be in default if payment was not received within the cure period. *Id.* "To construe the agreement in a manner that does not make timely payment a material term would render the cure period and default provisions meaningless." *Id*.

A similar result was reached in *In re Escarent*, where the contract in question specified a closing date for the sale of certain land within thirty days after the termination of a feasibility period. 423 Fed. Appx. at 466. The seller failed to close within the specified time period and there was a question of whether this was a material breach. *Id.* at 465. The Court noted that under the terms of the agreement, if the purchaser did not timely close, the seller could elect to either seek specific performance or to terminate the contract and receive liquidated damages. If the seller did not timely close, the purchaser had the option to extend the time for performance or terminate the contract. The Court concluded that in light of these provisions, time was of the essence because "to construe the contract so that timely performance is not a material term would render these provisions meaningless." *Id.* at 466.

15

Similarly here, if time is not of the essence, provisions of the Settlement Agreement would be rendered meaningless. The Settlement Agreement expressly provides that the release provided by Deutsche Bank is ineffective and that Deutsche Bank "shall have judgment for judicial foreclosure" if the short payoff is not received "on or before August 1, 2014." Paragraph 1.5 would be rendered meaningless if time is not of the essence, and JPMC and Deutsche Bank would be denied the remedy for which they contracted.

In addition, the nature and purpose of the Settlement Agreement demonstrate that time is of the essence. JPMC and Deutsche Bank were providing Young with a three month opportunity to avoid foreclosure by tendering a short payoff. By doing so, JPMC and Deutsche Bank were agreeing to forego their right to collect the full balance owed on the Loan, as well as the interest and other charges that were continuing to accrue. There is no reason that JPMC or Deutsche Bank should be required to extend that opportunity indefinitely, especially considering that JPMC had already been attempting to foreclose in the current suit for over two years by that point.

The language pointed to by Young in his brief does not undermine this conclusion. Young asserts that because there was not a firm date for the filing of dismissal documents after receipt of the short payoff, time was not of the essence. *Appellant's Br.*, p. 8. That argument ignores the remainder of the terms of the

Settlement Agreement. The provision on which Young relies provides that "within fourteen (14) days of fully executing this Agreement, the Lawsuit will be abated until August 1, 2014, or until dismissal pleadings are filed with the Court." CR 221. Under the terms of the Settlement Agreement, the filing of the dismissal pleadings would be triggered by JPMC's receipt of the Settlement Funds. CR 221, ¶1.2.1. If that occurred in May, June or July, the provision in question simply allowed the dismissal pleadings to be filed and acted upon, without requiring the parties to wait for the abatement to lift on August 1. That is in no way inconsistent with the conclusion that time was of the essence with regard to the receipt of the short payoff by August 1.

Young also relies on the general rule that designation of a particular date for performance does not itself indicate time is of the essence. *Appellant's Br.*, p. 6. While that general statement is true, the authorities upon which Young relies involve scenarios where the contract merely provided a date for performance without more. *Appellant's Br.*, p. 5-6; *Seismic & Digital Concepts, Inc. v. Digital Res. Corp.*, 590 S.W.2d 718, 720 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ) (contract provided date for delivery of software, but did not provide any consequences for the failure to comply with the delivery date); *Argos Res., Inc. v. May Petroleum Inc.*, 693 S.W.2d 663, 665 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (oilfield operating agreement provided date for commencing drilling of a

17

well, but did not provide any consequences for the failure to comply with the commencement date); *Shaw v. Kennedy, Ltd.*, 879 S.W.2d 240, 246 (Tex. App.—Amarillo 1994, no writ) (settlement agreement contained requirement to obtain release from related party and further provided that the settlement was to be completed by a date certain, but did not provide any consequences for the failure to comply with the completion date). The Settlement Agreement is distinguishable from these authorities because, as discussed above, other provisions in the Settlement Agreement provided consequences if the payment was not received by the August 1 deadline. CR 221-222.

When all of the terms of the Settlement Agreement are considered, it is clear that time was of the essence, and the short payoff was required to be paid by August 1, 2014. To hold otherwise would render the penalty and remedy provisions of the Settlement Agreement meaningless—an interpretation not permitted by Texas law.

### B. The parties' actions further demonstrate that the parties intended the August 1, 2014 deadline to be material.

It is undisputed that Young sought an extension of the August 1, 2014 deadline and that JPMC refused the requested extension. CR 251-252. These facts also demonstrate that the August 1, 2014 deadline was material.

In at least two of the cases cited by Young, the Courts found that the parties' actions in discussing the extension of a deadline, and the failure for such extension

18

to be approved, evidenced that the deadline was material. *Siderius, Inc. v. Wallace Co.*, 583 S.W.2d 852, 864 (Tex. Civ. App.—Tyler 1979, no writ.); *Builders Sand, Inc. v. Turtur*, 678 S.W.2d 115, 119 (Tex. App.—Houston [14th Dist.] 1984, no writ). For example, in *Siderius, Inc.*, the Court held that time was of the essence in a letter of credit transaction, which required the pipe to be loaded on board the vessels no later than November 30, 1974. 583 S.W.2d at 864. After the parties agreed to extend the original shipping deadline to January 15, 1975, the seller offered a $75,000.00 reduction of the price of the pipe for a second extension of the shipping date to January 31, 1975. *Id.* The buyer refused to agree to any further extension, and the seller argued time was not of the essence. *Id.* Noting that the seller requested an extension, which was refused, the Court held the January 15 deadline was a material term, which the seller breached by failing to perform timely. *Id.* Similarly, Young's request for an extension, and JPMC declination to agree to same, proves the materiality of the August 1, 2014 deadline.

### C. It is appropriate for a trial court to determine whether time is of the essence as a matter of law under circumstances like those presented here.

Young argues that whether time is of the essence is a fact issue for a jury to decide. *Appellant's Br.*, p. 6-7. In making this assertion, Young ignores cases, including a case from this Court, recognizing that under certain facts and circumstances, this is an issue that can be determined as a matter of law. *See e.g.,*

19

*Deep Nines, Inc.*, 246 S.W.3d at 846; *Lockhart-Hutchens v. Bergstrom*, 434 S.W.2d 453, 456 (Tex. Civ. App.—Austin 1968, writ ref'd n.r.e.). This Court has recognized that it is appropriate for the trial court to decide this issue as a matter of law where the court finds that "because of the subject matter of the contract [it] can judicially know that the parties clearly intended that time should be of the essence." *Lockhart-Hutchens*, 434 S.W.2d at 456. Like any question of fact, where the facts are undisputed, and "ordinary minds cannot differ regarding the conclusion to be drawn from the evidence," it is appropriate for the trial court to determine a question of fact in the context of a motion for summary judgment. *Hall v. Lone Star Gas Co.*, 954 S.W.2d 174, 176 (Tex. App.—Austin 1997, pet. denied).

**III.    The trial court did not abuse its discretion by rejecting Young's unclean hands arguments where JPMC fully performed and was simply seeking to enforce the express provisions of the Settlement Agreement.**

"Under the doctrine of unclean hands, a court may refuse to grant equitable relief to a plaintiff who has been guilty of unlawful or inequitable conduct regarding the issue in dispute." *Lazy M Ranch, Ltd. v. TXI Operations, LP*, 978 S.W.2d 678, 683 (Tex. App.—Austin 1998, pet. denied). However, this "rule is not absolute", and "the clean hands doctrine should not be applied unless the party asserting the doctrine has been seriously harmed and the wrong complained of cannot be corrected without the application of the doctrine." *Dunnagan v. Watson*,

20

204 S.W.3d 30, 41 (Tex. App.—Fort Worth 2006, pet. denied). "The determination of whether a party has come to court with unclean hands is left to the discretion of the trial court." *Id.*

Though Young characterizes his unclean hands argument as stemming from JPMC's failure to send a payoff quote, his actual position is that by enforcing the terms of the Settlement Agreement as written, JPMC has unclean hands. *Appellant's Br.*, p. 10. The undisputed evidence is that JPMC did provide a payoff quote. Specifically, JPMC provided a payoff letter on May 23, 2014, which provided a payoff quote good through August 1, 2014, in accordance with the terms of the Settlement Agreement. CR 245-247. Young then had over two months to apply for a refinancing loan and bring that loan to closing. Young waited until July 29, 2014, just days before the August 1, 2014 deadline to request an extension. CR 251. JPMC was under no obligation to grant such an extension and, as a party who fully performed under the Settlement Agreement, was free to require Young to live up to the bargain he had struck. To hold otherwise would deprive JPMC of the agreement it bargained for and would deprive it of its right to contract. JPMC's actions in refusing to modify the terms of the Settlement Agreement do not amount to unclean hands. Young's failure to meet the specified deadline was simply a failure of Young's own making.

21

Young's reliance on the "Further Acts" provision of the Settlement Agreement is misplaced. *Appellant's Br.*, p.10-11. This is not an instance where the parties are being required to take some action that was not contemplated by the terms of the Settlement Agreement to allow the parties to comply with the terms of the Settlement Agreement. Instead, Young is seeking to have the express terms of the Settlement Agreement modified to force JPMC to accept the short payoff at a date later than August 1, 2014. That was not the agreement bargained for by the parties. The "Entire Agreement" paragraph in the Settlement Agreement provides a mechanism for amendments, which provides that the Settlement Agreement "may not be clarified, modified, changed, or amended except in writing signed by each and every one of the signatories hereto, or their authorized representatives." CR 223. That process was not followed because the parties did not reach an agreement to modify the deadline set by the express terms of the Settlement Agreement. To adopt Young's argument would supplant the Entire Agreement provision and allow modifications to the Settlement Agreement, which were not bargained for by the parties.

Requiring that the terms of the Settlement Agreement be enforced so that JPMC obtained the benefit of the bargain it had struck does not amount to "unlawful or inequitable" conduct on the part of JPMC that would support a finding of unclean hands. Parties to a contract, especially parties who have fully

performed their obligations under the agreement, should be permitted to enforce the bargained for terms of the agreement. Accordingly, the trial court did not abuse its discretion in granting JPMC specific performance.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, JPMorgan Chase Bank, N.A., prays that the summary judgment in its favor be affirmed in all things.

Respectfully submitted,


_/s/ Marcie L. Schout_
Marcie L. Schout
Texas State Bar No. 24027960
Wm. Lance Lewis
Texas State Bar No. 12314560
**QUILLING, SELANDER, LOWNDS,**
 **WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
mschout@qslwm.com
llewis@qslwm.com

**ATTORNEYS FOR APPELLEE,**
**JPMORGAN CHASE BANK, N.A.,**

## CERTIFICATE OF SERVICE

On September 28, 2015, I served a copy of this Brief for Appellee via electronic service, upon the following:

Stephen Casey, Esq.
Casey Law Office, P.C.
595 Round Rock West Drive
Suite 102
Round Rock, Texas 78681.

*/s/ Marcie L. Schout*
Wm. Lance Lewis / Marcie L. Schout

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word and contains 5,607 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Marcie L. Schout*
Marcie L. Schout